AUSTIN BALDWIN et al., Respondents, *v.* THE LIVERPOOL
AND GREAT WESTERN STEAMSHIP COMPANY (limited),
Appellant.

Where a common-carrier, without inquiry as to the value of a package
delivered for transportation, agrees to carry it for a stipulated sum, and
there is no misrepresentation, deceit or artifice on the part of the shipper
to mislead the carrier, or notice on the part of the latter of a limited lia-
bility based upon value, from which an implied representation of value
might arise, the carrier is bound by his contract, and cannot claim an
additional compensation for transportation or for risk incurred, although
the package prove to be of greater value than he supposed; it is not the
duty of the shipper, in such case, to state the quality or value.

Where a carrier, under such circumstances, refuses to deliver the property
to the consignee, without the payment of an additional sum, which is
accordingly paid, an action may be maintained to recover it back as
having been paid under duress of goods.

*Orange Co. Bank* v. *Brown* (9 Wend., 85); *Magnin* v. *Dinsmore* (62 N. Y.,
35), distinguished.

(Argued May 31, 1878; decided June 11, 1878.)

APPEAL from judgment of the General Term of the
Supreme Court, in the first judicial department, affirming a
judgment in favor of plaintiffs, entered upon the report of a
referee. (Reported below, 11 Hun, 496.)

This action was brought to recover back a sum of money
alleged to have been paid under duress of goods.

The referee found, in substance, among other things, the
following:

On or about the 17th of January, 1872, the plaintiffs deliv-
ered to the defendants, who were carriers between New York
and Liverpool, at New York, for transportation to Liverpool,
two boxes, addressed to Bischoffsheim & Goldschmidt, Lon-
don, defendant executing and delivering a parcel receipt there-

for and receiving the charges for freight therein mentioned. Said boxes were shipped together, addressed to plaintiffs' correspondents at Liverpool. There was nothing in their appearance to indicate that the contents were of any considerable value. On the arrival of the steamship at Liverpool, defendants delivered one of said boxes to the consignees thereof, but refused to deliver the other, unless an additional freight of £200 sterling should be paid for the transportation, which the consignees paid under protest, and thereupon defendant delivered the said remaining box. The boxes contained first mortgage coupon bonds of The Atlantic and Great Western Railroad Company to an amount not definitely proven, but of about the par value of $1,000,000, with nothing on the face of the bonds indicating that anything further was required for their complete execution and negotiation, they purporting to be negotiable by delivery, which said boxes the plaintiffs, as express forwarders and carriers as aforesaid, had agreed with the said railroad company to forward and transport to London, and there deliver the same to Bischoff sheim & Goldschmidt, bankers, as the agents in England of the said railroad company. By the rules of the London Stock Exchange, and the general custom of doing business at London, it is necessary that all negotiable securities offered for sale at the London stock market be countersigned by some reputable firm of stock brokers, doing business at London, as a certificate of genuineness. It was intended that said bonds should be so countersigned by Bischoffsheim & Goldschmidt before their negotiation on the London market. The plaintiffs did not use any deceit towards the defendant, nor was the form or appearance of the boxes such as to mislead the defendant, nor did the plaintiffs in any way misrepresent to the defendant the character or value of the boxes, or of their contents. Neither at the time of the delivery by the plaintiffs of the boxes in question to the defendant, nor at any other time, did the defendant make any inquiry of the plaintiffs as to the value or character of the boxes or their contents. The plaintiffs prepaid to the defendant

at New York six dollars, the agreed sum upon freight for the transportation of said boxes. £200 would be a reasonable compensation for the carriage and risk of transportation of negotiable bonds that would pass by delivery of the value of $1,000,000. In the usual course of business, the amount of such compensation would be determined, not by any fixed tariff or rule, but by negotiation and agreement between the parties ; but, in case of property of that value and character, the sum above named would be a reasonable and customary charge therefor.

*George C. Holt*, for appellant. The circumstances under which the goods were shipped amounted to a fraud upon defendant, and authorized it to demand additional compensation. (*Magnin* v. *Dinsmore*, 62 N. Y., 45; *Gibbon* v. *Paynton*, 4 Burr., 2298; *Pardee* v. *Drew*, 25 Wend., 461; *Miles* v. *Cattle*, 6 Bing., 743; *Bradley* v. *Waterhouse*, Moody & M.,154; *Chicago, etc.; Co.* v. *Thompson*, 19 Ill., 578; *American Co.* v. *Perkins*, 42 id., 458; *Orange Co. Bank* v. *Brown*, 9 Wend., 116; 2 Kent, 603.) Aside from the fraud, defendant had a right to demand the amount collected at Liverpool as compensation for the risk incurred. (*Riley* v. *Horne*, 5 Bing., 217; *Magnin* v. *Dinsmore*, 62 N. Y., 39; *Walker* v. *Jackson*, 10 M. & W., 169; Angell on Carriers, § 150; *Coggs* v. *Bernard*, Smith's L. C., 291.

*S. Jones* and *William M. Hoes*, for respondents. There being no fraud defendant was bound by the contract under which the goods were shipped. (*Magnin* v. *Dinsmore*, 62 N. Y., 35–40; *Walker* v. *Jackson*, 10 M. & W., 161–168.) Plaintiffs were entitled to recover back the extra freight, it having been paid under duress of property. (*Harmony* v. *Bingham*, 12 N. Y., 99; *L. and I. R. R. Co.* v. *Patterson*, 41 Ind., 312.) The shipper was not bound to disclose the contents and value of the boxes to the carrier. (*Gorham Mfg. Co.* v. *Fargo*, 35 N. Y. Supr. Ct., 434; *Magnin* v. *Dinsmore*, 62 id., 35.)

CHURCH, Ch. J.   It is not disputed but that if the defendant was not legally entitled to exact the £200, for the transportation of the boxes, the plaintiffs are entitled to recover it back as having been paid under duress of goods.

The defendant might, and probably ought to have charged and been paid more than six dollars for carrying the two boxes to Liverpool, but it is difficult to find any principle of law under the findings of fact in the case, to sustain the defendant's claim for a greater compensation than that agreed upon.   The referee found that "the plaintiffs did not use any deceit towards the defendant, nor was the form or appearance of the boxes such as to mislead the defendant, nor did the plaintiffs in any way misrepresent to the defendant the character, or value of the boxes, or of their contents."   Whether the evidence would have warranted a different finding upon some of these points, it is not necessary to inquire.   It is sufficient that the evidence warranted the findings as made, and even if this court would have drawn other inferences from the facts proved, we cannot interfere with the conclusions of the referee, and these having been affirmed by the General Term, they are conclusive upon us.   The case therefore presents these parties as dealing at arms length.   The plaintiffs offer two boxes for transportation to Liverpool, and the defendant agrees to carry them for six dollars, which is assented to, and paid by the plaintiffs.   There was no deceit or artifice resorted to by the plaintiffs, nor was the form or appearance of the packages such as to mislead the defendant, nor was there any misrepresentation on the part of the plaintiffs.   There was no notice of a limtied liability based upon value from which an implied representation of value might arise, and no inquiry was made by the defendant upon that subject.

As the case stands before us, I am unable to see any reason why the defendant should not be bound by its contract.   It was competent to contract, and if it made a poor bargain, the fault was its own in omitting to attend to its own interests.   In the sale and purchase of property, if

there is neither fraud nor warranty, the maxim *caveat emptor* applies, and there is no liability. The same principle applies here. Common-carriers more than other persons cannot shut their eyes when dealing with others, and then ask the court to make new contracts for them. It requires two parties to make a contract. Here the defendant seeks upon its own motion to set aside its contract, and substitute another without the consent of the other party, and that too after performance by both parties, on the sole ground that the original contract was not as beneficial as it ought to have been. The case as found exemplifies the correctness of the general rule that in the absence of fraud, a person ought to be held bound by his contracts. The value of the contents of the boxes was in dispute, both at the trial and General Term, and is now in dispute. The railroad company and the plaintiffs regarded the bonds as incomplete, and not negotiable, and of the value only of the cost of reproduction, while the defendant insists that they were completely executed, and if in the hands of a *bona fide* purchaser would be a valid debt for their face against the railroad company, and hence that they were entitled to compensation for the carriage, including the risk, as if they were valid, negotiable securities.

Suppose the defendant had known the contents at the time and demanded £200 for its compensation, *non constat,* but the plaintiffs might have declined, and sought conveyance in some other mode. They would have been at liberty to do so, or to have compromised on some lesser sum. The defendant seeks to make them liable upon a contract, which they not only never did make, but for aught that appears never would have made, and without fault on their part.

We have been referred to no authority, and I have been unable to find any which sustains the contention of the defendant. It is well settled that when the carrier has not given notice that he would not be answerable for parcels, beyond a specified sum, unless informed of the value, or has made a special acceptance, it is not the duty of the shipper

to state the quality or value.   In the language of HOLROYD, J., in *Batson* v. *Donovan* (4 B. & Ald., 29), a case very fully considered and since repeatedly approved, "for then it would have been his (the carrier's) duty to make inquiry if he either wished to have a reward proportionate to their value, or to know whether they were goods of that quality for which he had sufficiently secured conveyance."   This rule does not apply if the shipper has used any means to conceal the value of the article, or is guilty of any misrepresentation or fraud in respect to it.   (*Orange Co. Bank* v. *Brown*, 9 Wend., 85.)   In this case the carrier was held not liable, for a large sum of money in the trunk of a passenger. The delivery of the trunk was regarded as a representation that it contained only what might be lawfully regarded as baggage which would not include money beyond, at all events, what was necessary for traveling expenses.   But NELSON, J., in delivering the opinion, states the general rule when there is neither notice nor special acceptance, to be, that "the carrier is bound to make inquiry as to the value of the box or article received, and the owner must answer truly, at his peril, and if such inquiries are not made, and it is received at such price for transportation as is asked with reference to its bulk, weight, or external appearance, the carrier is responsible for its loss, whatever may be its value."   (*Walker* v. *Jackson*, 10 M. & W., 168.)   The recent case in this court of *Magnin* v. *Dinsmore* (62 N. Y., 35), expressions from the opinion in which are cited by each of the parties in this cases, recognizes these rules.   The point decided was that when the carrier by the contract limits his liability to a specified amount, if the value is not stated by the shipper, the delivery of the article without anything being said, is a sufficient representation that the article is not in value beyond the limit to constitute a fraud in law, which will discharge the carrier from liability at least for ordinary negligence, and this is upon the ground that the carrier is thereby deprived of his proper reward, and is misled as to the degree of care and security which he should provide.   It is analogous in

principle to the last case cited. They establish that acts may constitute misrepresentation as well as words, and though silent, the passenger in the first case by delivering an ordinary trunk when taking passage for himself gave the carrier to understand that it contained ordinary baggage only, and in the last case the shipper having notice of a limited liability if the value was not specified by delivering the article without specifying the value, in effect represented that its value did not exceed the limit. This is as far as any of the cases have gone in favor of the carrier, and in my judgment the doctrine resulting in immunity from liability should not be extended. (Story on Bailments, § 567, and cases cited.)

It is contended that this presents a case of fraud in law. I think not. There having been no notice, nor special acceptance, an implied representation of value cannot arise, as in the case of *Magnin* v. *Dinsmore* (*supra*), and whether the size or appearance of the boxes were calculated to mislead, and whether the two boxes were a portion of the five boxes referred to in the evidence upon the stub of the receipt given for which the word "samples" was written, and if so whether that word was contained in the receipts to the knowledge of the shipper, were questions of fact bearing upon the general question whether the shipper used any means to mislead or deceive the carrier. This general question has been found against the defendant in every phase of it, and we cannot review it. It does not fall within the principle of any case where any court has held the shipper liable for fraud in law. All that can be said is that the carrier supposed that the boxes contained articles of small value, but omitted to exercise any care or diligence to ascertain their true value, while the shipper neither did or said anything expressly or impliedly which did mislead, or was calculated to mislead or deceive him.

It is also contended that aside from the question of fraud, the defendant had a right to demand the amount collected at Liverpool as compensation for the risk incurred. The

argument in favor of this proposition is that the rule of lia-
bility of common-carriers is based upon considerations of
public policy, and not upon the contract, and that while the
law compels him safely to carry, however small the sum
paid, such does not cover a compensation for a risk incurred,
of the extent of which he was not apprised. No authority is
cited for this position, and it seems to me plainly untenable.
True the rule of liability is founded upon considerations of
public policy, but this element does not distinguish a contract
of carriage from other contracts. Such a contract necessa-
rily includes all risks, and the compensation agreed upon is
regarded as sufficient for all liabilities. A carrier is not
bound to take goods without a just compensation, and may
exact pre-payment, but the law regards him as competent to
make contracts, and if he agrees to carry for an inadequate
compensation he is bound by his contract as well in respect
to his compensation, as in respect to any other element of
the contract, and he cannot plead ignorance unless the shipper
is in some way in fault within the rules before adverted to.

I agree with the learned counsel for the appellant that the
plaintiffs could not interpose their own fraud as an answer
to a claim for proper compensation upon the ground that
such fraud would relieve the defendant from liability, for
the reason that the fraud would vitiate the contract, and
would probably entitle the defendant to go upon a *quantum
meruit*. Whether the fraud would affect the question
of the amount of compensation it is unnecessary to de-
cide. The plaintiffs claim that there was no fraud, and
this claim has been adjudged in their favor. In the view
taken of this case by the referee, and at General Term, and
by this court as above indicated, the question of the extent
of the liability of the defendant in case the bonds had been
lost or stolen is immaterial. The defendant was bound by
its contract both as to compensation and obligation to safely
carry, and it is useless to speculate upon the possible conse-
quences to the defendant of entering into it. The other
points are not deemed important or tenable.

The judgment must be affirmed.

All concur.

Judgment affirmed.