JAMES KILPATRICK, Appellant, *v.* THE GERMANIA LIFE INSURANCE COMPANY, Respondent.

INVOLUNTARY PAYMENT. Under a mortgage providing that upon default in an interest payment, the principal and interest should become due at the option of the mortgagee, and also giving the mortgagor the privilege, at any time after a date specified, of paying the principal before maturity upon the payment of a thousand dollars additional as a bonus, the institution of foreclosure proceedings upon a default in an interest payment made before the time had arrived when the mortgagor could exercise his privilege, constitutes an election, final and irrevocable, to treat the mortgage debt as due; when, therefore, the mortgagor, having made financial arrangements for that purpose, notified the mortgagee that he would pay the mortgage and interest and the latter stated that the foreclosure suit had been discontinued, insisted upon the payment of the

bonus before it would satisfy the mortgage and threatened to sue for the interest, and, in order to procure the discharge of the mortgage, the mortgagor paid the bonus, such payment must be regarded as involuntary and may be recovered back in an appropriate action for that purpose.

*Kilpatrick* v. *Germania Life Ins. Co.*, 95 App. Div. 287, reversed.

(Argued October 26, 1905; decided November 21, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 17, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and an order denying a motion for a new trial.

This action is brought to recover the sum of one thousand dollars alleged to have been wrongfully exacted from the plaintiff by the defendant as a bonus on the payment of a mortgage, this sum being in excess of the principal and interest called for by the plaintiff's bond.

On August 28th, 1899, the plaintiff executed and delivered to the defendant his bond for $80,000, with a mortgage to secure the payment of the same, covering premises in the borough of Manhattan, in the city of New York, at six per centum per annum until the buildings on the mortgaged premises should be fully completed, and with interest thereafter at five per centum per annum, payable semi-annually on February and August first, with the privilege to the plaintiff of paying the principal sum secured by the bond and mortgage, with accrued interest thereon, at any time after August 28th, 1900, and prior to August 1st, 1901, upon the payment, in addition to the principal sum and interest, of the further sum of one thousand dollars.

The mortgage contained a covenant that upon default in the payment of interest, or any part thereof, on any day whereon the same was payable by the terms of the bond and mortgage, the principal sum, with all arrears of interest should, at the option of the defendant, become and be due and payable immediately.

The plaintiff made default in the payment of six months' interest, which became due and payable August 1st, 1900.

The defendant thereupon commenced an action to foreclose the mortgage, claiming the whole amount of principal to be due by reason of the default in payment of interest. The summons and complaint were filed in the office of the clerk of the county of New York August 7th, 1900, and the defendant was served with the summons and complaint about August 10th, 1900. On August 22nd, 1900, an order was entered by the defendant, *ex parte*, discontinuing the action and canceling the *lis pendens*, without costs. The plaintiff became aware of this discontinuance two or three days before the 28th of August, 1900.

On August 28th, 1900, the plaintiff paid to the defendant the principal sum of $80,000 secured by the bond and mortgage, together with interest, and also one thousand dollars bonus. This action was brought to recover the one thousand dollars bonus so paid by the plaintiff to the defendant on the ground that such payment was involuntary, and that the plaintiff was wholly under duress, and strenuously objected to the payment thereof, alleging that the same was wholly unwarranted both in law and equity. The plaintiff embodied in his complaint a second cause of action for money had and received by defendant to its use, and that no part thereof had been paid.

The action was tried at a jury term and the complaint dismissed at the close of the plaintiff's case. The judgment entered upon this decision was affirmed with a divided court, Presiding Justice VAN BRUNT and Justice HATCH dissenting.

*E. R. Root* and *Addison Allen* for appellant. The institution of the foreclosure suit by the defendant was such an exercise of its option by the mortgagee under its bond as effectually deprived the mortgagor of his privilege, and likewise relieved him from paying the consideration agreed on for such privilege. (*Conrow* v. *Little*, 115 N. Y. 387; *Terry* v. *Munger*, 121 N. Y. 161; *Genet* v. *D. & H. C. Co.*, 170 N. Y. 296.) The taking and retention of the $1,000 now sought to be recovered by the plaintiff were arbitrary, unjust and ille-

gal, and such as the law cannot justify or permit. (*Tripler v. Mayor, etc.*, 125 N. Y. 617; *Scholey* v. *Mumford*, 60 N. Y. 501; *Bates* v. *N. Y. Ins. Co.*, 3 Johns. Cas. 239; *Buckley* v. *Mayor, etc.*, 30 App. Div. 463; 159 N. Y. 558; *Carew* v. *Rutherford*, 106 Mass. 1; *McPherson* v. *Cox*, 86 N. Y. 472; *Homer* v. *State of New York*, 42 App. Div. 431; *Maxwell* v. *Griswold*, 51 U. S. 256; *Adams* v. *I. Nat. Bank*, 116 N. Y. 611.)

*J. Brewster Roe* for respondent. The commencement of the foreclosure proceedings was in nowise an election. (*Conrow* v. *Little*, 115 N. Y. 387; *Terry* v. *Munger*, 121 N. Y. 161; *Genet* v. *D. & H. C. Co.*, 170 N. Y. 296.) Where a payment is entirely voluntary, it cannot be said that it was made under duress, and it is, therefore, immaterial whether or not the mortgage had become payable before August 1, 1901. (*Windbiel* v. *Carroll*, 16 Hun, 101; *Mowatt* v. *Wright*, 1 Wend. 355; *Clark* v. *Dutcher*, 6 Cow. 674; *Wyman* v. *Farnsworth*, 3 Barb. 369; *Flower* v. *Lance*, 59 N. Y. 603; *Matthews* v. *Brewing Co.*, 26 Misc. Rep. 48; *Vaughn* v. *Village of Portchester*, 135 N. Y. 460; *Kortright* v. *Cady*, 21 N. Y. 343; *Hess* v. *Cohen*, 20 Misc. Rep. 333; *Bliss* v. *Wallis*, 3 How. Pr. [N. S.] 325.)

Bartlett, J. A very narrow question is presented on this appeal. We have a mortgage given on the 28th of August, 1899, payable August 1st, 1901. The interest was payable semi-annually on February and August first. The privilege was accorded the plaintiff of paying the principal sum and interest at any time after August 28th, 1900, and prior to August 1st, 1901, upon the payment in addition to the principal sum and interest of the further sum of one thousand dollars. The mortgage contained the usual covenant that upon default in the payment of interest the principal sum, with all arrears of interest, should, at the option of the defendant, become due and payable immediately. The plaintiff defaulted in the payment of his interest due August 1st, 1900.

The plaintiff, represented by his nephew, called upon the counsel for the defendant prior to the time he was served with the summons and complaint and sought to make some arrangement as to the payment of the interest, but was informed that counsel had been instructed to foreclose. A day or two later the plaintiff was served with the summons and complaint in the foreclosure action.

Some time later the plaintiff's nephew again called on counsel for the defendant to notify him that they would be ready to pay the amount of the bond and mortgage with interest within the next day or two, and informed him that they had arranged for a new loan of $95,000 on the same premises covered by the defendant's mortgage. The defendant's counsel then informed the plaintiff's nephew and representative that he was very sorry, but his client had withdrawn its foreclosure suit and proposed to sue for the interest only, and that they would not receive payment of the principal sum due under the bond and mortgage unless plaintiff paid the additional sum of one thousand dollars. This was some three or four days before the 28th of August, 1900, when the parties met and plaintiff paid the principal, interest and one thousand dollars bonus, protesting at the same time that the latter was an illegal exaction and was money not due the defendant.

The sole question presented is whether the payment of this bonus of one thousand dollars was, under the circumstances, voluntary or exacted when the plaintiff was under duress. It will be observed that at the time when the defendant saw fit to avail itself of the covenant contained in the mortgage providing that default in payment of interest should, at its option, make the principal sum and interest due and payable immediately, the time had not yet arrived when the plaintiff was permitted to exercise his option to pay the principal sum, interest and said bonus at any time after August 28th, 1900, and prior to August 1st, 1901.

At this time, on August 1st, 1900, it was for the defendant to decide whether it would elect to treat the mortgage debt as

due; it so elected, and instituted an action of foreclosure. From the moment of this election the mortgage debt became due and the plaintiff was practically warned that he must take measures to protect himself. It is undisputed that before the discontinuance of the foreclosure action the plaintiff had changed his position, had obligated himself to make a new loan on the mortgaged premises, and necessarily had contracted financial obligations in that connection.

After these negotiations for the new loan had proceeded to a point when the plaintiff was advised as to the time when he might expect the money thereon, he notified the defendant that on a day certain he would pay the mortgage and interest. Thereupon the defendant's counsel stated to the plaintiff that the foreclosure action had been discontinued and that an action would be begun to recover the interest only, and that the plaintiff would not be permitted to discharge the mortgage debt and interest unless he also paid the bonus.

The defendant having placed the plaintiff in this position, it had no power, by discontinuing the foreclosure action, to restore the status of the parties as existing on August 1st, 1900, when plaintiff made default in the payment of interest. The election made by defendant at that time to treat the mortgage debt as due became final and irrevocable after plaintiff's change of position and assumption of legal obligations, the direct result of that election. Thenceforward the right to exact the bonus, so called, of one thousand dollars departed from the defendant, because it had voluntarily waived it by bringing suit to foreclose the mortgage, and expressly alleging its election in the complaint. It could not again elect by withdrawing its previous election. It could not say, " I waive my waiver." The election once made was final and not subject to change at the option of the defendant. Notwithstanding this, the defendant insisted upon the payment of the bonus before it would satisfy the mortgage, and in addition threatened to sue for the interest. Having no right to the bonus, it still insisted on the payment thereof before it would do its legal duty. The plaintiff, in view of the way business is done

in giving a new mortgage to pay off the old one, could not wait to make a tender and take legal action and he was not obliged to. He could submit to the exaction and pay the bonus, and sue to recover it back, because such a payment is not voluntary. In effect the defendant held plaintiff's property in its grasp through its lien thereon and would not surrender it until the unlawful exaction was complied with. The payment was made to free the property from the duress as much as if it had been a chattel and the defendant had it in his possession under a pledge, refusing to part with it unless the bonus was paid. Under these circumstances the compulsion was illegal, unjust and oppressive and the plaintiff having submitted under protest had the right to recover, according to the authorities. The refusal of the defendant to accept the mortgage debt and interest unless the bonus was paid, placed the plaintiff in a position where he was compelled to submit to the exaction in order to receive a satisfaction of the defendant's mortgage and secure the money on the new loan which would protect him in the emergency.

The distinction between a voluntary and involuntary payment is very clearly pointed out in many cases. In *Tripler v. Mayor, etc., of N. Y.* (125 N. Y. 617), Judge Peckham states (p. 625) : " The very word used to describe an involuntary payment, imports a payment made against the will of the person who pays. It implies that there is some fact or circumstance which overcomes the will and imposes a necessity of payment in order to escape further ills."

In *Scholey* v. *Mumford* (60 N. Y. 498), Judge Rapallo remarks (p. 501) : " To constitute a voluntary payment the party paying must have had the freedom of exercising his will. When he acts under any species of compulsion the payment is not voluntary."

In *Bates* v. *New York Ins. Co.* (3 Johns. Cas. 238), Justice Thompson states (p. 239) : " The equitable extension of this kind of action " (money had and received) " has of late been so liberal, that it will lie to recover money obtained from any one by extortion, imposition, oppression,

or taking an undue advantage of his situation. In the present case, there was, at least, an undue advantage taken of the plaintiff's situation. * * * The money being inequitably demanded of him, he must be presumed to have paid it, relying on his legal remedy to recover it back."

In *Buckley* v. *Mayor, etc., of N. Y.* (30 App. Div. 463), Justice BARRETT states (p. 465): " There is no ironclad rule which confines an involuntary payment to cases of duress of person or restraint of goods. Money compulsorily paid to prevent an injury to one's property rights comes within the same principle. (*Carew* v. *Rutherford*, 106 Mass. 1.)" This case was affirmed without opinion in 159 N. Y. 558.

In *Radich* v. *Hutchins* (95 U. S. 210), Mr. Justice FIELD states (p. 213): " To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, for which the latter has no other means of immediate relief than by making the payment."

In *Adams* v. *Irving National Bank* (116 N. Y. 606), Judge BROWN, referring to the old common-law rule applicable to this subject, states (p. 610): " This was the strict common-law rule applied in cases where the duress was against the person seeking to be relieved from his contract. But in practice the narrowness of this doctrine was much mitigated, and money paid under practical compulsion was in many cases allowed to be recovered back, as, for example, payment made to obtain goods wrongfully detained; excessive fees when taken under color of office; excessive charges collected for performance of a duty, etc. In all such cases there was a moral coercion which destroyed the contract." (See, also, *Briggs* v. *Boyd*, 56 N. Y. 289 ; *Stenton* v. *Jerome*, 54 N. Y. 480 ; *Baldwin* v. *Liverpool & G. W. Steamship Co.*, 74 N. Y. 125.)

We are of opinion that the plaintiff was under duress when making the payment of the bonus of one thousand dol-

lars and is entitled to recover judgment for that sum with interest.

The judgments and orders of the Appellate Division and the Trial Term should be reversed, and a new trial ordered, with costs to the appellant in all the courts to abide the event.

GRAY, J. (dissenting). The plaintiff seeks to recover back from the defendant a sum of money, which, as he claims, was wrongfully exacted from him by the defendant upon his payment of the principal of a bond given to secure a loan of money to him. His right to it must depend upon whether the money was paid under compulsion; for if the payment was voluntary, with no duress of the person, or of goods, he is concluded. There was neither misrepresentation, nor mistake; for the payment was pursuant to an agreement and I am unable to perceive in the circumstances disclosed any ground for the recovery.

The plaintiff had borrowed $80,000 from the defendant and had given his bond, secured by a mortgage of real estate in New York, for the repayment. The loan was to be paid in two years. If default was made in the payment of interest, the principal sum became due immediately. Each instrument contained the following clause: " That the said James Kilpatrick shall have the privilege of paying said principal sum of $80,000, with accrued interest thereon, at any time after August 28, 1900, and prior to August 1, 1901, (the due date of the bond), upon payment to said company, in addition to said principal sum and interest, of the further sum of $1,000." Presumably, the $1,000 represented an indemnity to the company for the shifting of so large a loan and the temporary loss of the investment. The plaintiff failed to pay his interest on August 1, 1900, and, within a few days, the defendant commenced a suit in foreclosure of the mortgage; but, a few days later and before any appearance, or answer, voluntarily discontinued it, without costs. After the commencement of the foreclosure action, the plaintiff claims to have arranged to obtain the loan of $95,000 upon the mort-

gaged property; but the time, or terms, of the arrangement do not appear, nor does it appear that the defendant knew anything of the arrangement at the time when it discontinued the foreclosure suit. What does appear is that a nephew of the plaintiff, after the foreclosure suit was begun, spoke to the defendant's attorney and requested a little more time than the twenty days to answer, as he thought that they would be able to obtain another loan. At a later interview, the defendant's attorney informed him that the foreclosure action had been discontinued and that his client would sue for the interest due, and would not take payment of the principal without the additional payment of the $1,000 stipulated for. Thereafter, on August 28, 1900, the plaintiff paid the amount of the principal of his bond, with the additional $1,000.

It seems to me clear that the payment was, in law, voluntarily made. The defendant abandoned its foreclosure suit and decided to allow the loan to remain. The plaintiff could, then, have paid the interest; but he preferred to pay off the existing loan and to borrow a larger sum upon the property. This he had the right to do; but he could only exercise it by complying with the stipulation of his bond, in paying the $1,000 for the privilege. If it should be considered that the defendant, by its commencement of the foreclosure action, had forfeited, or compromised, its rights, then the plaintiff should have made a tender of the moneys due upon his bond; in which event, upon the defendant's refusal to accept them, he could have appealed to the courts to compel the discharge of the mortgage. (See *Kortright* v. *Cady*, 21 N. Y. 343, 347.) The two courses were open to him, to continue the existing loan, or to pay it off, and he chose the latter; which was to his convenience and advantage, as enabling him to borrow a larger amount. If the bargain shall be said to have been a hard one, the agreement was willingly entered into and I do not think it should be avoided upon the vague theory of some coercion in fact. It cannot, as I think, well be held that there was any duress, which coerced the plaintiff to make payment. There was no obligation upon him, at the time, to

pay the principal; though there was an advantage which he wished to seize upon, in his ability to borrow more upon his property. If the defendant had placed itself in a position, where it was bound to take the principal sum, it had withdrawn from that position and the plaintiff, as I have pointed out, made no tender in discharge of his indebtedness, upon which to predicate a right to have the satisfaction thereof decreed in equity. The utmost he can urge is that the defendant compelled him to abide by the strict terms of his agreement. That was not illegal and no circumstances are shown, which warrant the court in granting relief, whether upon the ground of fraud; or of duress of the person, or of goods; or to prevent injury to property rights.

For these reasons, as for those stated by Mr. Justice PATTERSON, in the Appellate Division, I advise the affirmance of the judgment.

HAIGHT, VANN and WERNER, JJ., concur with BARTLETT, J.; CULLEN, Ch. J., concurs with GRAY, J.; O'BRIEN, J., absent.

Judgment reversed, etc.