Argued December 9, 1966, affirmed February 23, 1967

# WEST PORTLAND DEVELOPMENT CO., *Appellant, v.* WARD COOK, INC., *Respondent.*

424 P. 2d 212

*Arthur H. Lewis,* Portland, argued the cause and filed a brief for appellant.

*Cleveland C. Cory,* Portland, argued the cause for respondent. With him on the brief were Marvin S. W. Swire and Clarence R. Wicks, Portland.

Before SLOAN, Presiding Justice, and GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

DENECKE, J.

The issue on appeal concerns the acceleration clauses in a note and trust deed. The debtor brought this action to recover an alleged illegal overpayment compelled by actionable duress.

Defendant Ward Cook, Inc. (Cook), lent plaintiff West Portland Development Co. (Development Co.) $500,000 to build an apartment. The obligation was evidenced by a note and secured by a trust deed running to the title company and for the benefit of Cook. The note provided it was to be paid in monthly installments with the final payment due in September, 1982. It further provided that in the event of a default the entire principal and interest would become due, at the option of the holder. The note stated that

a 3 per cent fee would be charged for the privilege of full prepayment within the first 10 years and thereafter the fee would be reduced one-quarter per cent per year.

The note became in default and on May 9 Cook exercised its option and declared the entire principal and interest due and the trustee gave notice of intent to sell. Development Co. succeeded in persuading Cook to cancel the sale proceedings and agreed to pay the rents to the trustee as they were received, to be applied upon the past-due installments. This agreement was reached on May 28.

On May 27 a document entitled "Rescission of Notice of Default" was executed by Cook. It was recorded August 22. There is no evidence that the Development Co. knew of it before that date. At some time in July, after rents were being applied on the indebtedness, Cook informed Development Co. that it desired Development Co. to make up the remainder of the delinquencies, continue the monthly payments and remain under the trust deed. Cook had an arrangement to sell the note and its beneficial interest in the trust deed to an insurance company.

Development Co. had a potential buyer, Pring Corporation. On approximately August 5 Pring informed Cook that it was definite that the note would be paid in full and it would refinance. Cook was charging 6 and one-half per cent interest and Pring could refinance at 5 and three-quarters per cent. At this time Pring's representative wanted Cook to "quote him some pay off figure."

About 10 days later, Cook informed Development Co. and Pring that the pay-off would be entire amount of principal and interest, a 3 per cent penalty in the amount of $15,168.24 and $5,000 attorney's fee. A few

days later these amounts were paid to Cook. Cook was informed that the penalty and attorney's fee were being paid under protest.

Plaintiff's position concerning the prepayment penalty is that when Cook exercised its option and declared the entire debt due, such election was irrevocable and could not be rescinded without the debtor's consent. The entire debt being immediately due, there was no prepayment and, therefore, no contractual basis for the exaction of any prepayment penalty.

■ The trial court as the trier of fact found the defendant waived its election to accelerate and reinstated the note according to its original terms. There is evidence to support such a finding of fact. The remaining question is, could the defendant under these circumstances, as a matter of law, wave or rescind its election?

Plaintiff relies heavily upon *Kilpatrick v. Germania Life Ins. Co.*, 183 NY 163, 75 NE 1124 (1905). In that case the debtor defaulted and the creditor started foreclosure proceedings. Sometime later, the debtor tendered the entire amount of principal and interest and the creditor declined to accept, demanding, in addition, the payment of a prepayment penalty provided for in the note. The creditor stated he had withdrawn the foreclosure proceedings. The evidence was that after foreclosure proceedings had been commenced the debtor "had changed his position, had obligated himself to make a new loan on the mortgaged premises, and necessarily had contracted financial obligations in that connection." 183 NY 168.

The court held: "The election made by defendant at that time to treat the mortgage debt as due became final and irrevocable after plaintiff's change of position and assumption of legal obligations, the direct result of that election." 183 NY at 168.

This appears to be an accurate statement of what we understand the law to be. The decisions cited by the defendant are not to the contrary. *Van Vlissingen v. Lenz,* 171 Ill 162, 49 NE 422, 423 (1898), cited by defendant, states the proposition in this form:

> "It is true that under some circumstances the law will not permit a party having once elected, to change such election, but will hold it irrevocable. This rule is generally applicable in cases where the opposite party would be in some way prejudiced by permitting him who has the right to elect, to revoke such election. * * *" 171 Ill at 167.

■ In the present case there is no evidence that plaintiff changed its position or acted to its prejudice after defendant gave notice of acceleration and before it rescinded the same. There is no evidence that Development Co., prior to Cook's rescission of acceleration, made a binding contract with Pring to sell clear of Cook's obligation. Cook requested Development Co. or Pring "to stay" on the note and pay the monthly installments; however, Pring desired the benefits of a new loan at 5 and three-quarters per cent interest. This was its business choice; however, to exercise it the penalty agreed to in the note had to be paid.

Plaintiff also contests the attorney's fee. The note provides: "[A]nd agree to pay reasonable attorney's fees and expenses of collection in case this note is placed in the hands of an attorney for collection or suit is brought thereon."①

---

① The trust deed contains several provisions regarding attorney's fees which are as follows:

"6. To pay all costs, fees and expenses of this trust, including the cost of title search as well as the other costs and expenses of the Trustee incurred in connection with or in enforcing this obligation, and trustees and attorney's fees actually incurred.

"7. To appear in and defend any action or proceeding

It is argued that if the default was waived by Cook and the acceleration was rescinded so as to permit the exaction of a prepayment penalty this same waiver and rescission would terminate Cook's right to attorney's fees.

■ This reasoning is fallacious. The note was in default and it was placed in an attorney's hands for collection. Therefore, according to the terms of the note, a right to an attorney's fee accrued. The abandonment of foreclosure proceedings, the waiver of the default and the rescission of the acceleration do not obliterate this right to an attorney's fee. It would be unreasonable to interpret this provision of the note to mean that if the attorney is successful and works out a solution whereby the lender is satisfied to resume receiving the monthly payments, the right to attorney's fees is terminated.

This court has so held in a problem in mortgages that is analogous. *Equitable Life Assur. Soc. v. Boothe,* 160 Or 679, 684, 86 P2d 960 (1939). There, the mortgagor defaulted, the mortgagee commenced a foreclos-

purporting to affect the security hereof or the rights or powers of Beneficiary, or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum to be fixed by the court, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this deed.

"* * * * *

"13. If after default and prior to the time and date set by the Trustee for the Trustee's sale, the Grantor or other person so privileged by ORS 86.760 pays the entire amount then due under the terms of the trust deed and the obligation secured thereby, other than such portion of the principal as would not then be due had no default occurred, the Grantor or other person making such payment shall also pay to the Beneficiary all of Beneficiary's costs and expenses incurred up to said time in enforcing the terms of the obligation, including Trustee's and Attorney's fees not exceeding $50 if actually incurred."

ure suit, praying for, among other things, attorney's fees. The mortgagor tendered the amount of the principal and interest due but no amount for attorney's fees. We held the tender was insufficient, stating: "The suit having been commenced, the right to the payment of a reasonable attorney's fee had accrued and, since the tender did not include the payment of any attorney's fees, the tender, for that reason alone, was invalid."

In this case the note was placed in the attorney's hands for collection and the right to an attorney's fee then accrued.

■ Plaintiff also denies that the note was placed in an attorney's hands for collection. It argues that this is true because the attorney proceeded under the trust deed law. The trial court found the note had been placed in the attorney's hands for collection. Proceeding against the security for the note is the most common method of collecting a note. More important, only a small portion of Cook's attorney's services was performed foreclosing the trust deed. Mainly, his services consisted of negotiations, securing an assignment of rents, and generally counseling on how to obtain payment of the note.

Plaintiff also contends the attorney's fee is limited by statute to $50. ORS 86.760[2] provides as follows:

"Whenever all or a portion of any obligation secured by a trust deed has become due by reason of a default of any part of that obligation, including taxes, assessments, premiums for insurance or advances made by a beneficiary in accordance with the terms of the trust deed, the grantor or his successor in interest in the trust property, or any part of it, any beneficiary under a subordinate trust deed

---

[2] California has a similar statute, Civ Code § 2924.

or any person having a subordinate lien or encumbrances of record on the property, at any time prior to five days before the date set by the trustee for the trustee's sale, if the power of sale therein is to be exercised, may pay to the beneficiary or his successors in interest, respectively, the entire amount then due under the terms of the trust deed and the obligation secured thereby (including costs and expenses actually incurred in enforcing the terms of the obligation and trustee's and attorney's fees not exceeding $50 each) other than such portion of the principal as would not then be due had no default occurred, and thereby cure the default. After payment of this amount, all proceedings hereunder shall be dismissed by the trustee, and the obligation and trust deed shall be reinstated and shall remain in force the same as if no acceleration had occurred."

■ The statute is not applicable for two reasons: First, as stated above, most of the attorney's work was not proceeding under the trust deed or the trust deed law. Second, this statute only contemplates a default, a commencement of a proceeding for a trustee's sale, and the debtor coming in and paying off the past-due installments, interest or other defaulted obligation. That is not what occurred in this case. Instead of coming in and paying off the instalments due, the debtor negotiated with the lender to discontinue the foreclosure proceeding and succeeded in having the sale date cancelled. The debtor also did not pay the installments due, rather it negotiated a payment of the entire debt in return for a conveyance from the trustee terminating the lender's beneficial interest.

The trial court found $5,000 was a reasonable fee for the attorney's services and plaintiff did not contest the reasonableness.

Affirmed.