426 So.2d 1342 (1982)
Alvin J. McCARTHY, Jr.
v.
LOUISIANA TIMESHARE VENTURE a Partnership in Commendam.
No. 13121.
Court of Appeal of Louisiana, Fourth Circuit.
December 17, 1982.
Rehearing Denied February 24, 1983.
*1343 Joseph W. Nelkin, New Orleans, for plaintiff-appellant.
Ralph S. Hubbard, III, Marcia L. Culley, Barham & Churchill, New Orleans, for defendant-appellee.
Before GULOTTA, BARRY, AUGUSTINE, BYRNES and CIACCIO, JJ.
BARRY, Judge.
This suit, initially instituted by a petition for executory process, arose out of defendant Timeshare's execution of a note in connection with the purchase of property from the plaintiff, McCarthy. By an amended petition the suit was converted to an ordinary proceeding due to discrepancies between the note and the act of mortgage. Subsequently, the note was assigned to Nichollstone Associates and by joint stipulation the parties agreed the foreclosure, seizure, and temporary restraining order were to be recalled, and reserved to McCarthy the right to pursue his claims for prepayment penalties, attorney's fees, interest and costs. The matters before the district court were these reserved claims plus Timeshare's reconventional demand against McCarthy for sums it was required to pay the Civil Sheriff to release the property held under seizure. Plaintiff now appeals the judgment which rejected his demands for attorney's fees and the prepayment penalty and granted the defendant's (plaintiff-in-reconvention) demand for the amount paid to the Sheriff.

FACTUAL BACKGROUND
The facts are not in dispute. The entire record was submitted to the lower court on a "Stipulation of Facts" along with numerous exhibits. The trial court is bound to render judgment in accordance with the stipulations unless they are in derogation of the law. General Investment Inc. v. Thomas, 400 So.2d 1081 (La.App. 4th Cir.1981).
The note in question was executed by Timeshare on December 19, 1980, payable to the order of McCarthy for the principal amount of $335,797.86, and secured by a mortgage on the property. Timeshare's obligation under the note was to pay $3,458.62 per month commencing January 15, 1981 and monthly thereafter on the 15th of each month until paid. The first three payments were made by Timeshare as follows:
# 1Due January 15, 1981; paid January 10, 1981 (5 days early)
# 2Due February 15, 1981; paid February 23, 1981 (8 days late)
# 3Due March 15, 1981; paid March 26, 1981 (11 days late)
Unknown to McCarthy at the time of the sale was that the property was purchased to create timeshare condominiums to be marketed by Timeshare. In April, 1981, prior to making tender of that month's payment, due to difficulties in finding purchasers and lenders, Timeshare's attorney, Ronald L. Naquin, began negotiations with McCarthy through his attorney, Joseph W. Nelkin, and proposed a program of partial releases of the mortgage be granted to Timeshare by McCarthy. By letter dated April 13, 1981, Nelkin reported to Naquin:
"Captain McCarthy is not disposed to the granting of any partial release.... He is, of course, willing to continue accepting monthly payments promptly made on the mortgage or to accept payment in full in accordance with the terms of the mortgage.
"Your client's payments through the month of March have been received, but the payments for the months of February and March were received late. In that regard I have been asked by Captain McCarthy to request that you notify your client that its payments are due and payable on the 15th day of each month and are delinquent if made thereafter. The acceptance of late payments to date should not be construed as an acquiescence in such continued late payments by your client." (Emphasis ours).
*1344 According to the stipulations, this letter was received by Naquin "on or about April 15, 1981," the due date of the fourth payment. During oral argument counsel for appellant stated the parties had no communication between the time this letter was received (April 15, 1981) and April 27, 1981.
On April 27, 1981 Naquin received notification by telegram from Nelkin that due to Timeshare's failure to tender the April 15th payment McCarthy was accelerating the "entire debt principle [sic] interest and twenty percent attorneys fees" and that foreclosure was to be instituted immediately. This message was reiterated by certified letter dated April 27, 1981 to Naquin which added "Unless the balance due on the mortgage, together with attorney's fees, be paid within (72) hours of receipt of this letter by you as agent for Leisuretime Marketing, Inc., suit will be filed for executory process foreclosure on the mortgage." The April 27 telegram was received by Naquin at 5:40 p.m. on the 27th. The certified letter was received on April 30, 1981.
On April 28, 1981, the day after receiving the telegram, Timeshare tendered the April 15th payment to Whitney Bank but it was refused pursuant to Nelkin's instructions to Whitney. Also on that date Naquin telephoned Nelkin offering to pay in full all principal, interest due, plus the prepayment penalty, but informed Nelkin the 20% attorney's fee was unacceptable to Timeshare.
On April 29, 1981 Nelkin hand delivered to Naquin a letter which related:
"(E)xecutory process foreclosure is being prepared and will be filed not later than April 29, 1981 ...
"In consideration of payment not later than May 7, 1981, the following will be accepted:

Principal balance $335,482.59
Interest through May 7 5,735.37
Contractual prepayment
 penalties 16,774.13
 ___________
TOTAL $357,992.09

"There must be added to this sum the contractually-provided attorney's fee of twenty (20%) percent of the principal and interest due. That attorney's fee amounts to $68,243.59. In consideration of payment of the entire sum, including principal, interest, prepayment penalty and attorney's fee, I am willing to reduce that attorney's fee to the sum of $42,500.00."
The letter concluded with a statement that the executory process foreclosure proceeding would continue but would be terminated if this sum was received on or before May 7, 1981.
On April 30, 1981, Naquin (then in receipt of all prior written correspondence) hand delivered to Nelkin a letter confirming the April 28 telegram and reiterating Timeshare's offer to pay in full "at the end of this week or early part of the next" all principal and interest due plus the prepayment penalty. The letter also rejected Nelkin's counter-offer for attorney's fees of $42,500 and proposed $1,000.00 instead.
On May 1, 1981, this suit for executory process was filed, a copy of which was mailed to Naquin.
Subsequently, on May 5, 1981, Timeshare for the first time since the notice of acceleration was received on April 27, tendered a check in the amount of $357,992.09 to McCarthy, amounting to principal, interest due, plus 5% prepayment penalty. McCarthy rejected the tender. On this same date Timeshare made another offer, this time to include $10,000 attorney's fees. This offer was also rejected by Nelkin in a letter dated May 5, 1981 in which he asserted he would accept no less than $42,500 for his fees. On May 6, 1981 Timeshare's attorney reconfirmed by letter willingness to pay all sums requested except the attorney's fees and also obtained a Temporary Restraining Order instructing the Sheriff to stop the foreclosure.
On May 15, 1981, McCarthy assigned the note to Nichollstone Associates in return for payment of principal and interest due thereon. Timeshare and McCarthy entered a Joint Stipulation reserving to McCarthy his right to pursue the prepayment penalty, attorney's fee, together with interest and costs. The parties also agreed the executory process foreclosure, writ of seizure and *1345 sale, and Temporary Restraining Order were to be recalled by Joint Motion. The court signed the order on May 15, but the Sheriff refused to release the seized property until fees due him under LSA-R.S. 33:1506 were paid. McCarthy refused to pay any of this fee. After negotiations the Sheriff agreed to accept one-half of the amount charged, Timeshare paid $5,243, and the property was released.

VALIDITY OF ACCELERATION
McCarthy contends the Trial Judge's reliance on Sternberg v. Mason[1] led to the erroneous conclusion that the late second and third payments were accepted without protest and therefore set a precedent requiring McCarthy to give ample notice that future payments must be timely made or the debtor would be placed in default. Citing numerous cases, McCarthy asserts Louisiana jurisprudence does not support the finding that the facts of this case, i.e., two late payments, established a "course of conduct" between the parties.
Timeshare, relying on the Reasons for Judgment, maintains a precedent for late payments was established and, consequently, adequate notice was required before acceleration. Timeshare contends the April 13 letter was not "ample notice" and accordingly McCarthy was not entitled to accelerate the note.
The First Circuit in Sternberg, supra, discussed the basis for such a rule at p. 376:
(S)uch a rule is to prevent an obligee from lulling an obligor into a false sense of security by accepting late payments over an extended period of time, without demand for punctuality, and then at a future date of his own choosing accelerate the entire balance due on the obligation when the "late" payment complained of falls within the same pattern. (Emphasis ours).
Sternberg involved a debtor who made late payments for a period of one year. Timeshare's first payment was five days early; the second eight days late and the third eleven days late. After the two late payments, McCarthy's attorney wrote the April 13 letter to Timeshare's attorney, Naquin, and clearly protested the two late payments, demanded future payments be punctual and expressly asserted "(t)he acceptance of late payments to date should not be construed as an acquiescence in such continued late payments by your client." There was no tender of the April 15 payment until April 28, 1981, 13 days after the due date and 13 days after receipt of the April 13 letter. Under the facts as stipulated we find that after only two late payments, combined with the April 13 letter, a precedent for late payments was not established.[2] Consequently, "ample notice" was not required and McCarthy was entitled to accelerate the note upon Timeshare's failure to pay the April 15 installment when due.
Timeshare also argues and the Trial Judge found the language in the April 13 letter gave Timeshare the option of continuing to pay monthly or tendering full payment. Timeshare contends it chose the latter with McCarthy's knowledge and hence no April 15 payment was due. Considering the language of the letter and the sophistication of the parties we find no merit to this contention.

PREPAYMENT PENALTY
McCarthy's next assignment of error is that he should have been awarded the 5% prepayment penalty because it was an integral part of the contract and an obligation recognized by Timeshare in all post default negotiations. In support, McCarthy cites a Supreme Court of Oregon case[3] which he states holds that, after the holder gave notice of acceleration, the maker decided to pay the note in full and was found to pay *1346 the prepayment penalty. He asserts the trial court erred in finding he forced a prepayment and accordingly the 5% penalty was not due. Rather, he argues the foreclosure was brought about by Timeshare's failure to pay the April installment promptly. Timeshare offered to pay the note in full, arranged for the sale to Nichollstone Associates, and the foreclosure proceedings were then terminated. All of this was at Timeshare's request and hence McCarthy argues the contractual prepayment was due as in West Portland, supra.
Timeshare counters no prepayment was due because the language of the note provided it with the sole option to prepay and did not give McCarthy the right to call the note and receive prepayment. Timeshare argues the right of the debtor to prepay, depriving the creditor of expected interest, is available only when specifically conferred in the contract. Lindsay Realty Corp. v. Bellina, 320 So.2d 572 (La.App. 4th Cir. 1975). McCarthy elected to accelerate the note declaring it due and forced Timeshare to have the debt paid in full.
The note provided:
The principal of this note may be prepaid at any time. Should the principal or any part thereof be prepaid during the first year of the note, the borrower will pay a prepayment penalty of five (5) percent of the amount of the said prepayment ....
We find the language of the note does not contemplate a prepayment penalty when acceleration occurs at the option of the holder; rather, it is applicable when prepayment is elected by the maker. Shortly after the April 13 letter Naquin informed Nelkin that Timeshare "intended" to pay the note in full. However, no tender of full payment was made until May 5, 1981 after the note was accelerated (April 27, 1981) and after suit for executory process foreclosure was filed (May 1, 1981). Hence, prior to payment or any tender the note had been accelerated. When payment was tendered (and paid) the note was already due at the election of McCarthy, hence, there was no prepayment and the penalty clause was not applicable.

ATTORNEY'S FEES[4]
McCarthy maintains the Trial Judge erred in finding that the note required a showing of "necessity" for employment of an attorney before the attorney's fees could be claimed. He submits the 20% attorney's fee in the note was due when Timeshare failed to timely pay the April installment and suit was filed.
Adopting the Trial Judge's Reasons, Timeshare counters that the note's language compels a showing of necessity before the fees are due. Timeshare argues since McCarthy was not entitled to accelerate because he failed to give notice of his change of conduct and because payment was tendered prior to institution of the foreclosure proceedings, there was no necessity to employ an attorney. Timeshare also urges under these facts the amount of 20% in the note, or the 10% in the mortgage, is unreasonable and contra bonos mores citing People's National Bank of New Iberia v. Smith, 360 So.2d 560 (La.App. 4th Cir.1978).
The note provided:
Every person at any time liable for [this note] ... agrees in case suit be brought for collection hereof or the same has to be collected upon demand of an attorney, to pay all the attorney's fees so incurred, which fees are hereby fixed at twenty (20) percentum on all amounts, principal and interest, due and owing by the maker... (Emphasis added).
As we said in Maurin v. Adam Lumber Co., 140 So.2d 804 (La.App. 4th Cir.1962) at p. 807:
(I)f a note requires a showing of necessity for the employment of attorneys, before the fees may be claimed, the plaintiff must show that amicable demand had produced no results and that, therefore, there was necessity, but that if such a note merely provides that the fees would *1347 be due "in event of * * * nonpayment at maturity," then all that would be necessary would be to show nonpayment. The note in the case before us does not require that necessity be shown, but provides only that the attorney's fees will be due "in the event this note is not paid at its maturity and is placed in the hands of an attorney at law for collection * * * ". Accordingly not only do the facts here show that demand was made, but the law as established by the Supreme Court in the two cases cited gives the holder of the note the right to demand the attorney's fee merely as a result of the failure of the maker of the note to pay at maturity.
This note only provides that attorney's fees will be due "in case suit be brought for collection hereof" and does not require a showing of "necessity." When Timeshare failed to pay the April installment, and no course of conduct to accept late payments had been established, McCarthy was entitled to accelerate the note without giving "notice." Tender of the April payment (April 28) was not made until after the notice of acceleration had been received by Timeshare (April 28). Once the note was accelerated the entire debt became due and McCarthy had the right to file suit. Prior to filing suit Timeshare, as per the stipulations, informed McCarthy only that it "intended" to pay the debt in full, but no tender of full payment was made until May 5, 1981, eight days after the notice of acceleration was received and four days after suit was filed (May 1, 1981). Once the suit was filed for collection McCarthy had the right to demand attorney's fees.
The note is the contract between the parties and will be enforced as written unless contra bonos mores. Dickens v. Young, 378 So.2d 132 (La.App. 4th Cir.1979), writ denied 381 So.2d 1221 (La.1980); People's National Bank of New Iberia v. Smith, supra.
This Court has denied stipulated attorney's fees because of unreasonableness, People's National Bank, supra. The First Circuit held contra in Leenerts Farms, Inc. v. Rogers, 411 So.2d 576 (La.App. 1st Cir.), but was reversed, 421 So.2d 216 (La.Sup.Ct., 1982).
Our Supreme Court has now determined that the courts may inquire into the reasonableness of attorney fees despite a stipulation in the note fixing the fees at a percentage of the amount to be collected upon the default of the debtor. Lennerts Farms, Inc., supra.
McCarthy is entitled to an attorney's fee commensurate with his counsel's legal skills, the complexity of the litigation, time expended, and results achieved. Appellate courts can set fees when the record reflects a basis; however, the learned Trial Judge would be in a much better position here to make that determination after both sides have an opportunity to show what amount would be reasonable under these facts.

RECONVENTIONAL DEMAND
Finally, McCarthy asserts the Trial Judge erred in granting Timeshare's reconventional demand for sheriff's fees paid to release the seizure. McCarthy claims Nichollstone Associates purchased the note and mortgage, assumed liability for the fees, and should reimburse Timeshare. We disagree. McCarthy's attempt to secure executory process was thwarted because of discrepancies[5] between the note and mortgage which made the attempted seizure improper. The wrongful seizure was instigated by McCarthy and the expense incurred was rightfully charged to him.

DECREE
IT IS ORDERED that the judgment of the District Court:
1. Is affirmed in dismissing plaintiff's claim for a prepayment penalty;
2. Is reversed as to plaintiff's claim for attorney's fees and this matter is *1348 hereby remanded to the District Court for a hearing to determine the amount of attorney's fees to be awarded plaintiff.
3. Is affirmed granting plaintiff-in-reconvention judgment against defendant-in-reconvention in the amount of $5,243.00, plus legal interest from judicial demand until paid.
IT IS FURTHER ORDERED that each party bear his/its own costs.
AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.
NOTES
[1] 339 So.2d 373 (La.App. 1st Cir.1976), writ denied 341 So.2d 901 (La.1977)
[2] See Meyer v. Consolidated Marketing, Inc., 376 So.2d 1278 (La.App. 2d Cir.1979) holding that one late payment was insufficient to establish a course of conduct.
[3] West Portland Development Co. v. Ward Cook, Inc., 246 Or. 67, 424 P.2d 212 (Or.1967)
[4] A five judge panel, including Judges Gulotta and Augustine, was convened, heard argument, and decided this issue.
[5] Two discrepancies we noted were the different dates of the obligation in the note and mortgage and different percentages for legal fees.