■ GIMBEL BROTHERS, INC., Respondent-Appellant, v BROOK SHOPPING CENTERS, INC., et al., Appellants-Respondents.—In an action for declaratory and injunctive relief, the defendants appeal and the plaintiff cross-appeals, as limited by their respective notice and cross notice of appeal, from stated portions of a judgment of the Supreme Court, Westchester County (Buell, J.), entered April 9, 1984.

Judgment modified, on the law, the facts and as a matter of discretion, by deleting the fourth decretal paragraph thereof. As so modified, judgment affirmed, insofar as appealed from, without costs or disbursements.

In this declaratory judgment action, the court was called upon to determine the rights and obligations of the parties under a lease dated September 6, 1955. The plaintiff, Gimbel Brothers, Inc. (Gimbels), is the lessee under the lease of certain premises at the Cross County Shopping Center in Yonkers, New York. The defendant, Brook Shopping Centers, Inc. (Brook), is the owner of the shopping center, and the successor in interest to the original lessor. The defendant, Marx Realty & Improvement Co., Inc. (Marx), is the managing agent of the shopping center. It was stipulated by the parties that, when the lease was negotiated, "there were no discussions concerning Sunday openings of the Cross County Store".

This was so because, at the time the lease was negotiated, New York's "Sunday Blue Laws" *(see,* former Penal Law of 1909 art 192, now General Business Law art 2), were still in effect. In 1976, the Court of Appeals held the prohibition against public sales on Sunday, set forth in General Business Law § 9, to be unconstitutional *(People v Abrahams,* 40 NY2d 277). It was stipulated that the Gimbels store at the Cross County Shopping Center, which had been in business since 1955, opened on a Sunday for the first time on August 29, 1976. Gimbels admits that starting in or about January 1977 it paid approximately $10 per Sunday to the former landlord of the premises as "Sunday charges", although it alleges it had no duty under the lease to do so. As of December 1977 the "Sunday charge" was increased by the new landlord Brook to $825 per Sunday. For the period from January 1, 1978 through June 30, 1978, Gimbels admittedly paid these increased Sunday charges totaling $19,800. As of July 1, 1978, however, Gimbels ceased making these payments and subsequently commenced this action seeking a declaration that it has no duty to do so. Gimbels also sought a declaration that it had no duty to pay certain parking fines which defendants had assessed, as well as an injunction prohibiting defendants from, *inter alia,* "interfering with or disturbing Gimbels in its use, possession and enjoyment of the store". The trial court granted this relief, and the defendants have appealed. Gimbels also sought a declaration that it could properly set off the $19,800 in Sunday charges it had paid against future rents due to Brook under the lease, but this relief was denied by the trial court. It is from that portion of the judgment under review that Gimbels has cross-appealed. We agree with all of the trial court's findings of fact and conclusions of law, except for the holding that Gimbels is entitled to injunctive relief. We therefore modify the judgment accordingly.

First, we agree with the trial court that the defendants were not entitled to reformation of the contract so as to permit the exaction of "Sunday charges". The lease simply does not provide for such charges. Nor does the lease prohibit Gimbels from opening on Sunday, should it choose to do so. In fact, the lease provides that the landlord would, *inter alia,* keep the shopping center's roadways and walkways clean and well lighted "at all times that [Gimbels], *in its sole discretion,* shall elect to be open for business" (emphasis added). The defendants' argument is that the law as it existed in 1955 must be incorporated into the lease agreement. It is true that contracting parties may be presumed to have acted with

reference to existing, rather than subsequent law *(see, e.g., Moller v Peoples Natl. Bank,* 258 NY 373, 376-377; *Kinney v Kinney,* 48 AD2d 1002).* However, this does not mean that a material change in the law will automatically entitle an aggrieved contracting party to reformation. Thus, for example, a landlord is not entitled to the reformation of a lease because the city, for the first time, imposes sewer rents on property owners, creating an additional burden on the landlord which, if foreseen, might have been shifted to the tenant *(see, Black v General Wiper Supply Co.,* 305 NY 386). As the Court of Appeals has stated, "[t]he law is well settled that changes in a lease are not to be presumed or implied; and no additional liability will be imposed upon a tenant unless it is clearly within the provisions of the instrument under which it is claimed" *(455 Seventh Ave. v Hussey Realty Corp.,* 295 NY 166, 172; *Black v General Wiper Supply Co., supra,* at p 390). This principle has been repeated by the Court of Appeals in *Rowe v Great Atl. & Pac. Tea Co.* (46 NY2d 62) and elsewhere. "[T]he courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *(Rowe v Great Atl. & Pac. Tea Co., supra,* at p 72.) We conclude that the mere fact that a change in the law works to the advantage of one of the contracting parties does not alone entitle the other party to an adjustment of his contractual rights or duties so as to neutralize the affect of such a change. The trial court therefore correctly declared that Gimbels had no duty to pay "Sunday charges".

Gimbels argues, on its cross appeal, that it is entitled to restitution of the $19,800 it paid in "Sunday charges" between January and June 1978. Gimbels argues, in this regard, that such payments were made pursuant to a mistake of fact. We find, however, that the weight of evidence supports the conclusion that the payments of $825 per Sunday for 24 Sundays were made voluntarily, without protest, and that no mistake of fact was involved. Arthur Weber, the former accounting manager for Gimbels' New York Division, testified that he was authorized by Gimbels' treasurer, Frederick Van Pelt, and the vice-president and director of stores for Gimbels' New York Division, a Mr. Roberts, to pay those charges while the matter was being investigated. Van Pelt testified that he instructed the accounting manager to consult with Mr. Roberts. According to Van Pelt, the decision to stop paying the $825 per week charge was made at a subsequent annual budget expense review meeting. The vice-president of Gimbels

in charge of real estate, Stanley Glinsky, who, according to Van Pelt, attended that meeting, testified that he did not know the payments were being made and first learned about them after they had been stopped. Mr. Roberts did not testify. The sample invoices relating to these payments contained in the record clearly indicate that the $825 per week charge was for Sunday openings. Gimbels' witnesses could not specify what precise fact was supposedly mistaken, or what officer at Gimbels actually made a mistake. Under all of these circumstances, we conclude the trial court correctly found that no mistake of fact had been made.

It therefore becomes necessary to consider whether Gimbels should receive restitution of the $19,800 it paid in "Sunday charges" on the ground that those payments were made under a mistake of *law* (i.e., a mistake regarding Gimbels' contractual duty to pay such charges). The traditional rule is that a voluntary payment made with full knowledge of the facts cannot be recovered because it was made pursuant to a mistake of law *(Adrico Realty Corp. v City of New York,* 250 NY 29; *Flynn v Hurd,* 118 NY 19). The harshness of this absolute rule was ameliorated by the enactment of CPLR 3005, which provides that "[w]hen relief against a mistake is sought in an action * * * relief shall not be denied merely because the mistake is one of law rather than one of fact". However, in *Mercury Mach. Importing Corp. v City of New York* (3 NY2d 418, 429), it was held that the foregoing statute "does not require that mistakes of law shall be treated in all instances as though they were mistakes of fact". Clearly, then, a party is not automatically entitled to relief simply because that party acted under a mistake of law *(see, Birchwood Towers #1 Assoc. v Haber,* 98 AD2d 697, 699; *Goodison v Goodison,* 66 AD2d 923, *affd* 48 NY2d 786). We do not believe that the trial court abused its discretion in denying such relief in this case. Indeed, we find that the weight of the evidence supports the conclusion that Gimbels was not operating under an actual mistake of law but, instead, made the subject payments voluntarily, as a matter of convenience, without having made any effort to learn what its legal obligations were. Gimbels admittedly paid the $825 per week fee for almost half a year, and had voluntarily paid a lower fee for Sunday openings for almost a full year prior to that. When a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made *(Flower v Lance,* 59 NY 603, 610;

*Consolidated Fruit Jar Co. v Wisner,* 103 App Div 453, 457). Gimbels displayed a marked lack of diligence in determining what its contractual rights were, and is therefore not entitled to the equitable relief of restitution.

Turning to the issue of the parking fines imposed by the defendants upon Gimbels, we agree with the trial court that such fines were imposed in violation of the clear provisions of the lease. Specifically, article 3 (d) of the lease provides that "[n]o charge for parking in the Common Parking Area shall be exacted or collected from Tenant * * * without Tenant's prior written consent". The defendants clearly violated this provision.

Although the trial court correctly issued a declaratory judgment in accordance with the foregoing, we find that it exercised its discretion in an improvident manner by ordering that the defendants and their agents are "permanently enjoined and restrained from interfering in any manner with Gimbels' use, possession or enjoyment of the premises * * * so long as Gimbels complies with the provisions of its lease". This injunction, in essence, compels the landlord to respect the rights of the tenant, provided the tenant respects the rights of the landlord. It is, in other words, "little more than a direction to do right in the future" *(Earl v Brewer,* 248 App Div 314, 315, *affd* 273 NY 669). A judgment granting injunctive relief " 'must define specifically what the enjoined person must or must not do, in language so clear and explicit that a layman can understand what he is expected to do, or refrain from doing' " *(Xerox Corp. v Neises,* 31 AD2d 195, 197-198, quoting from 28 NY Jur, Injunctions, § 147; *see also, ·Waterman Corp. v Johnston,* 276 App Div 1062, 1063; *Earl v Brewer, supra).* We furthermore find, as a matter of fact, that Gimbels did not establish that the defendants were threatening an act contrary to its rights which, in the absence of injunctive relief, would cause irreparable injury. For these reasons, we delete the grant of injunctive relief from the judgment under review, and otherwise affirm the judgment, insofar as appealed from. Gibbons, J. P., Thompson, Brown and Weinstein, JJ., concur.