■ EIGHTY EIGHT BLEECKER Co., LLC, Respondent, v 88 BLEECKER STREET OWNERS, INC., Appellant. [824 NYS2d 237]—

Judgment, Supreme Court, New York County (Debra A. James, J.), entered April 27, 2005, awarding plaintiff the principal sum of $36,415.42, unanimously reversed, on the law, without costs, and the judgment vacated. Order, same court and Justice, entered October 14, 2004, which granted plaintiff's motion for summary judgment on the first two causes of action in the complaint and denied defendant's cross motion for summary judgment dismissing the second cause of action, unanimously reversed, on the law, without costs, plaintiff's motion denied, defendant's cross motion granted and the first two causes of action dismissed.

By agreement dated January 11, 1982, defendant landlord entered into a lease with plaintiff's predecessor partnership for commercial space in a residential, cooperative building. This partnership was converted into a limited liability company in July 1995 and is the plaintiff herein. The agreement was an overlease, with nine tenants in occupancy at the time of the agreement.

The lease was for a 20-year term, with two 15-year renewal options. The annual rent was set at $43,000, with no increases other than tax escalations. The 15-year renewals were to be on the same terms, with no rent increase. The tax escalation, payable as additional rent, was defined in the lease as "a sum equal to ten per cent of any increase in the amount of real estate taxes over and above those payable for the fiscal year 1981/1982 which may be imposed upon the property of which the Demised Premises form a part . . . Tax bills shall be sufficient evidence of the amount of such taxes and shall be used for the calculation of the amounts to be paid by Tenant." The principal places of business of both defendant landlord and plaintiff tenant were set forth in the lease as c/o Leonard Krim, Esq., at 10 East 40th Street, New York, New York. The law firm of Krim and Krim, P.C., of which Leonard Krim, Esq., is a member, represents plaintiff. Mr. Krim is also plaintiff's managing partner.

By letter dated January 3, 2000, plaintiff exercised its option to renew the lease for the first 15-year renewal period. Thereafter, in December 2002, plaintiff commenced the underlying action by serving a summons and complaint upon defendant alleging three causes of action. The first cause of action claimed defendant overcharged plaintiff rent in the amount of $225.20 per month from December 1, 1996 through July 31, 2002. The second cause of action claimed defendant overcharged plaintiff additional rent pursuant to the tax escalation clause in the lease from fiscal year 1997-1998 through fiscal year 2001-2002. The third cause of action alleged that defendant had not paid

over to plaintiff real estate tax refunds it had received. Defendant's answer denied the allegations and raised affirmative defenses of, inter alia, statute of limitations, unclean hands, waiver, estoppel, ratification and laches.

Plaintiff moved for summary judgment on the first two causes of action in May 2004. The affidavit of Leonard Krim in support of the motion claimed that when exercising its renewal option in January 2000, plaintiff first noticed it had been overpaying the rent. Krim wrote to the then managing agent of defendant and demanded an explanation. His affidavit further stated that in November 2002, he discovered the tax escalation overcharges for the period set forth in the complaint and again wrote to defendant's managing agent demanding reimbursement. With respect to the tax overpayment claim, plaintiff contended that rather than calculating tax escalations upon the actual real estate taxes imposed on the property, defendant had calculated them based on the gross real estate taxes before the City's deductions of exemptions and abatements, which reduced the actual amount to be paid.

We note at the outset that the record undisputedly demonstrates that plaintiff, a sophisticated entity, one of whose members apparently participated in the drafting of the lease, and whose law firm represents plaintiff, made no inquiry for approximately 20 years regarding the amount of rent it was paying. There is no evidence that plaintiff, during the lengthy period of the initial term of the lease, ever reviewed the rent provisions and compared them to the rent bills it was receiving from defendant's former managing agent. It needed only to check the amount of the base rent set forth in the lease to determine if overcharges were indeed being made. Since plaintiff paid these charges "without protest or even inquiry, and [was] not laboring under any material mistake of fact when [it] did so" (*Westfall v Chase Lincoln First Bank*, 258 AD2d 299, 300 [1999]), its claim as to the basic rent overcharge is barred by the voluntary payment doctrine. Plaintiff was not acting under a mistake of fact, and its "marked lack of diligence in determining what its contractual rights were" demonstrates that the payments were voluntary and not made under mistake of law (*Gimbel Bros. v Brook Shopping Ctrs.*, 118 AD2d 532, 536 [1986]).

It is unclear from this record whether the voluntary payment doctrine was raised and considered in prior proceedings. In any event, it is "well settled that, in deciding the propriety of a summary judgment motion, a court (even an appellate court) may search the record and grant summary judgment to the

nonmoving party on any related claim" (*A.C. Transp. v Board of Educ. of City of N.Y.*, 253 AD2d 330, 338 [1999], *lv denied* 93 NY2d 808 [1999]). The record here shows that the voluntary payment doctrine is certainly applicable. Plaintiff's motion for summary judgment on the first cause of action is thus denied and the defendant is granted summary judgment dismissing that cause of action.

With respect to the second cause of action regarding the claimed real estate tax escalation overcharges, similar reasoning applies. The lease provides that plaintiff pay each year, as additional rent, a sum equal to 10% of the amount of real estate taxes in excess of the base year amount imposed upon the entire property. To compute this amount, the lease further provides that "Tax bills shall be sufficient evidence of the amount of such taxes and shall be used for the calculation of the amounts to be paid by Tenant." Plaintiff claims that defendant overcharged it by not deducting J-51 abatements and other tax exemptions before computing the amount owed by it under the tax escalation clause.

In *Ran First Assoc. v 363 E. 76th St. Corp.* (297 AD2d 506, 509 [2002]), we held that "To permit landlord to collect additional rent based on taxes forgiven by the taxing authorities, and therefore not payable by either the landlord or the shareholders, would allow the landlord to reap a windfall not envisioned by, and contradictory to, the parties' agreement." The tax escalation clause here is materially indistinguishable from that in *Ran*. Once again, however, plaintiff's failure to make inquiry regarding the tax increase and computations made to arrive at those increases for over 20 years raises the applicability of the voluntary payment doctrine.

Computation of the taxes was not an overly burdensome task, particularly for a sophisticated entity such as plaintiff. The tax bills reflect both the total gross tax owed for the premises and itemized adjustments therefor, such as the J-51 abatement. Review of the tax bills, to which it was entitled pursuant to the terms of the lease, would have allowed plaintiff readily to ascertain the appropriate amount of its liability under the tax escalation clause for each of the years in question.

As with the rental payments, plaintiff made the tax payments "without having made any effort to learn what its legal obligations were" (*Gimbel Bros.*, 118 AD2d at 535). Concur—Mazzarelli, J.P., Friedman, Nardelli, Sweeny and McGuire, JJ.