■ DRMAK Realty LLC et al., Appellants, v Progressive Credit Union, Respondent. [18 NYS3d 618]—

Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered May 30, 2014, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), affirmed, with costs.

Plaintiff Alexander Klein, a sophisticated real estate investor, obtained a loan from defendant in the amount of $3,350,000, secured by a mortgage on a condominium owned by plaintiff DRMAK Realty LLC, an entity controlled by Klein. The loan carried an annual interest rate of 7.5% with an initial interest payment of $16,052.16, due upon execution. The failure to make a payment within 10 days after its due date constituted a default. Following any such default, the annual interest rate increased to the lower of 16% or the maximum allowed by law, and defendant could charge an additional late fee of 5% of each overdue payment. The mortgage also provided that defendant was entitled to costs and expenses, including reasonable attorneys' fees, for foreclosing on the mortgage in the event of a default or failure to make payment.

Klein defaulted on the loan several times, and defendant commenced two foreclosure actions. Defendant discontinued the first foreclosure action, reinstated the loan, and reset the interest rate to the non-default rate of 7.5% after Klein paid the arrears. Defendant commenced a second foreclosure action in November 2012, although Klein claims he was never served with a summons and complaint.

In mid-2013, Klein sought to settle the loan and refinance with a different lender. On May 1, 2013, defendant's general counsel advised him in an email that defendant was "willing to accept the amount of $3,536,580[ ] as settlement in exchange for a release of its mortgage lien" on the condominium. The amount included "all legal fees, delinquent fines, assignment/release fees, May 2013 regular loan payment and all other fees, charges or expenses which are incurred or may be incurred prior to loan payoff by 5/20/2013." Klein asserts in an affidavit submitted in connection with this motion that he "immediately telephoned [defendant] and conveyed my shock at their attempt to hold me up." He did not close that month, but rescheduled for June 2013, and requested a new payoff letter from defendant. On June 3, 2013, defendant sent Klein a new payoff letter, which was substantially the same as the previous one. Klein claims that he was separately advised that defendant would only issue a satisfaction of the mortgage if he delivered a check to defendant for $18,000, representing the June 2013 interest payment. Klein did so, and a closing was held at which Klein paid defendant the entire amount demanded in the June payoff letter.

Plaintiffs thereafter commenced this action alleging that defendant extorted unlawful interest and other charges, in exchange for delivery of a satisfaction of mortgage that it was legally and contractually obligated to deliver. Plaintiffs alleged that all defaults were cured by payments of money owed, including all late payments, and that "[a]t least $186,578.24 of the total Payoff charges were improper," "manufactured charges not incurred or owed." Plaintiffs asserted causes of action alleging breach of contract, fraud, restitution for excessive fees, unfair business practices, violation of General Business Law § 349, and breach of the implied covenant of good faith and fair dealing.

Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), arguing that plaintiffs' causes of action were barred by the voluntary payment doctrine and that defendant was entitled to the payoff amount. In opposition, plaintiffs argued that the disputed payment was not voluntary, because Klein was under duress and had no choice but to make the payment to refinance the loan. They submitted, inter alia, the account statement showing that payments on the loan were current as of March 31, 2013, with only the principal balance outstanding, which was not due until November 2015. They also submitted Klein's affidavit, in which he stated that the account was paid in full through May 1, 2013.

The IAS court granted defendant's motion. The court held that plaintiffs' allegations "are insufficient to demonstrate that [defendant] coerced Klein into accepting the proposed payoff terms, and, instead, conclusively demonstrate that Klein voluntarily and intentionally paid the entire payoff amount that was fully disclosed and itemized in the June payoff letter, issued several days prior to the closing." Further, relying on defendant's factual allegations, the court noted that Klein did not dispute that he is a sophisticated real estate investor who had previously obtained two $4 million loans from defendant, that approximately six weeks after closing he requested another loan from defendant, and that at closing, where he was represented by attorneys, he failed to raise any objections to the terms of the payoff.

Addressing individual components of the payoff amount, the court held that the charges of "$12,500 in fees, including attorneys' fees," was proper because Klein was obligated to pay reasonable attorneys' fees incurred by defendant to enforce the note, and defendant's counsel commenced two foreclosure actions and negotiated their settlements with him. The court further held that the interest included in the payoff amount was for May 2013 and therefore proper. The court did not specifically address the $150,000 charge for "Prepayment Settlement Amount" or $3,140.64 for "Other," unspecified fees.

The voluntary payment doctrine bars recovery of payments voluntarily made with full knowledge of the facts, in the absence of fraud or mistake of material fact or law (*Dillon v U-A Columbia Cablevision of Westchester*, 100 NY2d 525 [2003]). The onus is on a party that receives what it perceives as an improper demand for money to "take its position at the time of the demand, and litigate the issue before, rather than after, payment is made" (*Gimbel Bros. v Brook Shopping Ctrs.*, 118 AD2d 532, 535 [2d Dept 1986]). Here, there is no claim of fraud or mistake. Defendant was entirely aboveboard about the amount of money it expected to be paid to settle the loan. Nevertheless, Klein made the calculated decision to schedule the closing and to pay off the entire amount demanded. Nor, as discussed below, did Klein "take [his] position at the time of the demand."

Plaintiffs argue that the voluntary doctrine should not apply because Klein was deprived of a meaningful choice as to whether to pay off the loan on defendant's terms. They further claim that Klein protested the demand and that this shielded plaintiffs from any application of the doctrine. Nothing in plaintiffs' complaint or papers in opposition to the motion sug-

gests that these are viable positions. It is assumed, of course, that plaintiffs' factual allegations are true, both in the complaint and in opposition to the motion (*see Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]). However, conclusory allegations will not serve to defeat a motion to dismiss (*see Phillips v Trommel Constr.*, 101 AD3d 1097, 1098 [2d Dept 2012]). Nothing in the complaint or the affidavit alleges any reason why Klein had no choice but to go through with the closing; indeed, he was able to put off the closing the first time he received from defendant what he considered an unreasonable payoff demand. Accordingly, the dissent's reliance on *Rovello v Orofino Realty Co.* (40 NY2d 633 [1976]), which it claims required Supreme Court to convert the motion to one for summary judgment, is misplaced. That is because Rovello presupposes that "the complaint is sufficient on its face" (40 NY2d at 634). The dissent quotes Klein's allegations at length and concludes that "it is clear that he paid under protest and duress." However, this conclusion is based on nothing more than a wholesale adoption of Klein's own ipse dixit. Incidentally, we agree with the dissent that a sophisticated investor can be subject to economic duress. We simply do not find that plaintiffs adequately alleged duress in this case.

This situation contrasts starkly with that considered by the Court of Appeals in *Kilpatrick v Germania Life Ins. Co.* (183 NY 163 [1905]), relied upon by the dissent. There, the terms on which the defendant loaned money to the plaintiff entitled the plaintiff to pay the loan off early, but not until one year into the loan's term, if he paid to the defendant a $1,000 "bonus." Before one year of the term had passed, the plaintiff defaulted on the loan, and the defendant commenced a foreclosure action. The plaintiff arranged to refinance the loan, and agreed to pay the entire amount due and owing. The defendant, however, withdrew the action and informed the plaintiff that it would only permit full payment of the balance if the plaintiff paid the $1,000 "bonus," despite the fact that the first year of the loan term had still not expired. The plaintiff paid the bonus so it could go through with the refinance closing, and then sought to recover the $1,000 from the defendant. The Court recounted that "[i]t is undisputed that before the discontinuance of the foreclosure action the plaintiff had changed his position, had obligated himself to make a new loan on the mortgaged premises, and necessarily had contracted financial obligations in that connection" (183 NY at 168). Recognizing "plaintiff's change of position and assumption of legal obligations," the Court sustained the claim, finding that "payment was made to free the property from the duress as much as if it

had been a chattel and the defendant had it in his possession under a pledge, refusing to part with it unless the bonus was paid" (183 NY at 168-169). The dissent accurately summarizes the facts and holding of *Kilpatrick*, but fails to recognize that here, plaintiffs make no allegation that Klein was similarly deprived of any economic choice but to go forward with the closing. Because there is no such allegation, we view the complaint as merely seeking recovery of a payment that Klein admits he did not believe he was obliged to make. Accordingly, the dissent is mistaken in stating that *Gimbel Bros.* (118 AD2d 532) does not apply.

*Kilpatrick* is also distinguishable insofar as the Court there expressly noted that the plaintiff "submitted under protest" (183 NY at 169). Here, there is not a single allegation that Klein protested the payment in such a way that he preserved his right to later sue to recover it. To be sure, he stated in his affidavit in opposition that he complained to defendant when it presented its payoff letter in May 2013. However, by even the most liberal reading of that affidavit, there is no indication that Klein protested again in June when he received the second payoff letter. Nor is there any allegation to even suggest that Klein took steps to indicate that he was reserving his rights when he made payment to defendant at the closing and accepted satisfaction of the mortgage. Thus, *1300 Ave. P Realty Corp. v Stratigakis* (186 Misc 2d 745, 749 [App Term, 2d Dept 2000]), also relied upon by the dissent, is inapposite. There, the plaintiff, who had borrowed money from the defendant, paid the full amount demanded by the defendant, including the defendant's attorneys' fees, to refinance the loan and avoid foreclosure. The plaintiff then sought to recover the attorneys' fees, which it claimed were unreasonable. The court, citing *Kilpatrick* (183 NY 163) held that the defendant's motion to dismiss the claim was correctly denied, since "[p]laintiff's opposition papers allege that payment in satisfaction of the mortgage was made to preserve the closing to refinance the mortgage, and under protest, and thus sufficiently raise issues of fact as to whether the payment of attorneys' fees was voluntary" (186 Misc 2d at 749).

Because Klein failed to allege that his payment to defendant was made under duress and under protest, we agree with the IAS court that plaintiffs' claims are barred by the voluntary payment doctrine. Concur—Gonzalez, P.J., Mazzarelli and Kapnick, JJ.

Acosta, J. dissents in a memorandum as follows: I dissent because I believe that a sophisticated investor can still be

subjected to duress. And, although the majority seems to acknowledge this, it nonetheless affirms the dismissal of the complaint notwithstanding that the issue is raised in the context of a CPLR 3211 motion, where the court must accept each and every allegation as true and liberally construe the allegations in the light most favorable to the pleading party, and *"determine only whether the facts as alleged fit within any cognizable legal theory"* (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994] [emphasis added]). In my opinion, the motion court erred in finding as a matter of law that plaintiff Klein's payment to defendant of the disputed amount in satisfaction of the mortgage was voluntary, since plaintiffs allege in the complaint and in opposition to defendant's motion that Klein made the payment to preserve the closing so as to refinance the mortgage with another lender (*see Kilpatrick v Germania Life Ins. Co.*, 183 NY 163, 168-169 [1905]; *1300 Ave. P Realty Corp. v Stratigakis*, 186 Misc 2d 745, 748-749 [App Term, 2d Dept 2000] ["Plaintiff's opposition papers allege that payment in satisfaction of the mortgage was made to preserve the closing to refinance the mortgage, and under protest, and thus sufficiently raise issues of fact as to whether the payment of attorneys' fees was voluntary"]).

Here, dismissal was not warranted pursuant to CPLR 3211 (a) (7), since a court may consider affidavits submitted by the plaintiff to remedy any defects in the complaint, and plaintiff clearly met this standard (*Leon v Martinez*, 84 NY2d at 88; *Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976]). Specifically, in his complaint, plaintiff alleged that he "was told by Defendant that if he did not agree to pay the interest and other charges, the Defendant would appear at the closing and would not issue a satisfaction. *Under the circumstances, Plaintiff had no choice but to pay the charges"* (emphasis added). In his affidavit in opposition to the motion to dismiss, plaintiff averred, among other things, that "[t]he closing letter provided for an additional $186,578.24 in unsubstantiated fees and expenses . . . I immediately telephoned Koshers and conveyed my shock at their attempt to hold me up. I demanded a breakdown." Plaintiff did not close in May, and requested a new closing statement for June, which he received on June 3, 2013. According to plaintiff, the new payoff letter provided for only $1.86 less than the May letter. He also stated, "Koshers also told me, if I wanted him to show up at the closing, I had to pay $18,000.00 in advance representing June interest. I hand delivered to Defendant's office the $18,000.00 interest payment . . . The interest on a per diem basis should only have been $4,885.00." Thus, although plaintiff did not use the words

"protest" or "duress," it is clear that he paid under protest and duress.

Moreover, the documentary evidence submitted by plaintiffs in opposition to the motion reflects an outstanding balance as of March 31, 2013 equal to the principal amount, which was not due until November 1, 2015, and defendant's sole submission in support of its contention that it is entitled to the disputed amount is an affidavit by its general counsel, which does not constitute documentary evidence for purposes of a motion to dismiss pursuant to CPLR 3211 (a) (1) (*Tsimerman v Janoff*, 40 AD3d 242 [1st Dept 2007]). Indeed, defendant's general counsel's statement, in his affidavit, that plaintiff Klein is a sophisticated real estate investor who did not show any reservation as to defendant's payoff demands to allow him to close on the refinancing with the new lender is of no moment inasmuch as affidavits are not documentary evidence within the meaning of CPLR 3211 (a) (1), and are not properly considered pursuant to CPLR 3211 (a) (7) (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976]).

As the Court held in *Rovello v Orofino Realty Co.* (40 NY2d at 635-636): "[A]ffidavits may be used freely to preserve inartfully pleaded, but potentially meritorious, claims. Modern pleading rules are 'designed to focus attention on whether the pleader has a cause of action rather than on whether he has properly stated one.' *In sum, in instances in which a motion to dismiss made under CPLR 3211 (subd [a], par 7) is not converted to a summary judgment motion, affidavits may be received for a limited purpose only, serving normally to remedy defects in the complaint*, although there may be instances in which a submission by plaintiff will conclusively establish that he has no cause of action. It seems that after the amendment of 1973 affidavits submitted by the defendant will seldom if ever warrant the relief he seeks unless too the affidavits establish conclusively that plaintiff has no cause of action" (citations omitted and emphasis added). The majority, however, in relying on defendant's affidavits, seems to treat the motion as one for summary judgment.

In addition, I disagree with the majority that *Kilpatrick* (183 NY 163) is inapposite. In *Kilpatrick*, the plaintiff had taken out an $80,000 mortgage on property in 1899 that required him to pay interest semiannually, and allowed the defendant to declare the full outstanding balance of principal, interest, and arrears due upon default. Under the terms of the mortgage, the plaintiff also had the option to pay the mortgage off in full between August 28, 1900 and August 1, 1901 if he paid a bonus of $1,000.

The plaintiff defaulted on his interest payment due on August 1, 1900, and the defendant instituted a foreclosure action. Thereafter, the plaintiff notified the defendant that he had arranged a new loan for $95,000, and intended to pay the entire amount of the mortgage with interest. The defendant responded by withdrawing the foreclosure action and informing the plaintiff that it would not accept the payment of principal and interest without the $1,000 bonus. The plaintiff paid the principal, interest and, under protest, the $1,000 bonus, and then sued to recover the $1,000.

The Court of Appeals held that the payment of the bonus was not voluntary. It found that by instituting the foreclosure action, the defendant had waived its right to the $1,000 bonus upon the plaintiff's early satisfaction of the mortgage. The Court further found that, because the plaintiff had changed his position by obligating himself to a new loan, due to the defendant's election to foreclose on the mortgage, the defendant was estopped from withdrawing the foreclosure action to restore the parties to their positions before the plaintiff's default. Thus, the defendant had no right to the $1,000 bonus that it demanded.

The Court further found that because the defendant had no right to the payment, which the plaintiff protested, and the "plaintiff, in view of the way business is done in giving a new mortgage to pay off the old one, could not wait to make a tender and take legal action," the payment was made to "free the property from the duress" (183 NY at 168-169). The plaintiff could "submit to the exaction and pay the bonus, and sue to recover it back, because such a payment is not voluntary" (*id.* at 169). The Court further explained: "Under these circumstances the compulsion was illegal, unjust and oppressive and the plaintiff having submitted under protest had the right to recover . . . The refusal of the defendant to accept the mortgage debt and interest unless the bonus was paid, placed the plaintiff in a position where he was compelled to submit to the exaction in order to receive a satisfaction of the defendant's mortgage and secure the money on the new loan which would protect him in the emergency" (*id.*).

I also disagree with the majority's reliance on *Gimbel Bros. v Brook Shopping Ctrs.* (118 AD2d 532 [2d Dept 1986]). The majority, as well as the motion court, seized on the statement in *Gimbel* that "[w]hen a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made" (*Gimbel Bros.,*

118 AD2d at 535). However, that statement was made in the context of a mistake of fact or law, without any element of coercion.

Specifically, in *Gimbel Bros.*, the department store began opening for business on Sundays after certain laws, which prohibited public sales on Sundays, were found unconstitutional. The landlord demanded an extra payment for each Sunday that the store operated, although the lease, which was negotiated at a time when the store was not legally permitted to operate on Sundays, did not require such payments. The store acceded to the landlord's demand for a period of months before ceasing such payments and suing to recover the Sunday charges already paid.

The sole issue with respect to the voluntary payment doctrine in *Gimbel Bros.* was whether payment of the charges was due to a mistake of fact or law. *Without addressing duress or coercion*, the court concluded that there was no mistake of fact or law that would enable the store to recover the Sunday charges already paid. Explaining that the store had paid the Sunday charges for a year and one half without making any effort to determine its rights, the court stated, "When a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made" (*id.*). The issue and the context for this statement were entirely different from those here, where plaintiffs claim they were coerced into making the payment by facing in only a matter of days the loss of the opportunity to refinance the mortgage.

Accordingly, I would reverse.