■ GREATER BRIGHT LIGHT HOME CARE SERVICES, INC., et al., Plaintiffs, v JOSEPH JEFFRIES-EL, Defendant, EL EQUITY CORPORATION, Appellant-Respondent, SANDSPORT DATA SERVICES, INC., Respondent-Appellant, and HSBC BANK USA, Formerly Known as MARINE MIDLAND BANK, Respondent. (And Other Titles.) [58 NYS3d 68]—

Appeal and cross appeal from an order of the Supreme Court, Kings County (David I. Schmidt), dated October 29, 2014. The order, insofar as appealed from, denied the motion of the defendant El Equity Corporation for summary judgment on its cross claims and awarding it punitive damages and attorneys' fees, granted that branch of the cross motion of the defendant Sandsport Data Services, Inc., which was for summary judgment dismissing the first cross claim of El Equity Corporation, and granted the cross motion of the defendant HSBC Bank USA, formerly known as Marine Midland Bank, for summary judgment dismissing the third cross claim of El Equity Corporation. The order, insofar as cross-appealed from, denied that branch of the cross motion of the defendant Sandsport Data Services, Inc., which was for summary judgment dismissing the second cross claim of El Equity Corporation.

Ordered that the order is affirmed, with one bill of costs to the defendant HSBC Bank USA, formerly known as Marine Midland Bank, payable by the defendant El Equity Corporation.

In or around August 1998, the plaintiff Greater Bright Light Home Care Services, Inc. (hereinafter GBL), allegedly entered into an agreement with the City of New York, acting through the Human Resources Administration (hereinafter HRA), to provide home care services to certain Medicaid-eligible individuals (hereinafter the Home Care Contract). For these

services, GBL was paid by checks from the New York State Department of Health's Medicaid Management Information System (hereinafter MMIS). The Home Care Contract required GBL to secure a $1.2 million line of credit to fund its operation. The defendant El Equity Corporation (hereinafter El Equity) allegedly agreed to extend the line of credit to GBL, and, in exchange, El Equity was entitled to a finance fee of $120,000 per year, or $10,000 per month.

El Equity, GBL, and Marine Midland Bank (hereinafter Marine) entered into an agreement dated March 5, 1999 (hereinafter the Escrow Agreement). Under the terms of the Escrow Agreement, all checks issued by MMIS to GBL as reimbursement for services provided by GBL under the Home Care Contract (hereinafter MMIS checks) were required to be deposited into a specific account established by GBL at Marine (hereinafter the Escrow Account). Marine was required to receive and deposit the MMIS checks into the Escrow Account, and to disburse the funds in accordance with a formula set forth in the Escrow Agreement. In particular, Marine was required to disburse part of the MMIS funds into an account established by El Equity at Marine for the purpose of receiving its finance fee of $10,000 per month.

The Escrow Agreement required GBL to instruct MMIS in a signed writing that the defendant Sandsport Data Services, Inc. (hereinafter SDS), a licensed service bureau with the New York State Department of Health, was the sole party authorized to receive GBL's MMIS checks. GBL was also required to instruct SDS, in a separate signed writing, to deposit all MMIS checks into the Escrow Account, and that SDS was not permitted to deposit MMIS checks into any other account unless and until it received written instructions signed by both GBL and El Equity. GBL entered into a separate agreement with SDS, in which SDS agreed that it would pick up all MMIS checks on a weekly basis and deposit them into the Escrow Account (hereinafter the SDS Agreement). Additionally, under the SDS Agreement, SDS was not permitted to deposit MMIS checks into any account other than the Escrow Account unless and until it received written instructions signed by both GBL and El Equity.

In August 1999, GBL, together with the plaintiff Greater Bright Light Baptist Church, commenced this action against SDS, HSBC Bank USA, formerly known as Marine Midland Bank (hereinafter HSBC), El Equity, and El Equity's vice president, Joseph Jeffries-El. The complaint alleged, inter alia, that El Equity never advanced the $1.2 million line of credit to

GBL. El Equity asserted cross claims against SDS alleging conversion and breach of contract, and a cross claim against HSBC alleging aiding and abetting conversion. El Equity alleged that SDS had picked up four MMIS checks from the HRA and delivered those checks directly to GBL, instead of depositing the checks into the Escrow Account as required under the SDS Agreement. El Equity further alleged that HSBC had assisted GBL in setting up a new account to accept the diverted MMIS checks, and that HSBC accepted deposits of MMIS checks into the new account from GBL.

El Equity moved for summary judgment on its cross claims against SDS and HSBC, and awarding it punitive damages and attorneys' fees. SDS and HSBC separately cross-moved for summary judgment dismissing the cross claims asserted against each of them. The Supreme Court granted that branch of SDS's cross motion which was for summary judgment dismissing the first cross claim, which alleged conversion, and granted HSBC's cross motion for summary judgment dismissing the third cross claim, which alleged aiding and abetting conversion. The court denied that branch of SDS's cross motion which was for summary judgment dismissing the second cross claim, which alleged breach of contract, denied that branch of El Equity's motion which was for summary judgment on that cross claim, and referred the matter to a Judicial Hearing Officer for a hearing on the amount of damages, if any, sustained by El Equity as a result of SDS's breach of the SDS Agreement. The court also denied those branches of El Equity's motion which were for summary judgment awarding it punitive damages and attorneys' fees. El Equity appeals, and SDS cross-appeals.

As an initial matter, contrary to SDS's contention, El Equity has the capacity to maintain its cross claims against SDS and HSBC. In support of its cross motion, SDS presented evidence demonstrating that, in June 2002, El Equity was dissolved by proclamation. A dissolved corporation may not carry on new business (*see* Business Corporation Law § 1005 [a] [1]) and no longer has the right to commence an action in the courts of this State, except in specific circumstances permitted by statute (*see MMI Trading, Inc. v Nathan H. Kelman, Inc.*, 120 AD3d 478, 479 [2014]). Business Corporation Law § 1006 provides, in relevant part, that a dissolved corporation "may continue to function for the purpose of winding up the affairs of the corporation," and that "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim

existing or any liability incurred before such dissolution." A corporation therefore "continues to exist after dissolution for the winding up of its affairs, and a dissolved corporation may sue or be sued on its obligations, including contractual obligations and contingent claims, until its affairs are fully adjusted" (*Cava Constr. Co., Inc. v Gealtec Remodeling Corp.*, 58 AD3d 660, 661 [2009]). Here, the MMIS checks at issue were allegedly transferred in or around July 1999 and August 1999, and El Equity asserted its cross claims against SDS and HSBC in or about May 2000. El Equity is permitted to pursue its cross claims against SDS and HSBC in the course of winding up its affairs (*see MMI Trading, Inc. v Nathan H. Kelman, Inc.*, 120 AD3d at 479; *Moran Enters., Inc. v Hurst*, 66 AD3d 972, 975 [2009]; *J. Sackaris & Sons, Inc. v Onekey, LLC*, 60 AD3d 733, 734 [2009]). Additionally, under the circumstances presented, including that El Equity had previously attempted to settle its counterclaims against GBL and the causes of action asserted by GBL against it, SDS failed to demonstrate that El Equity no longer maintained the capacity to assert its cross claims in 2013, when El Equity moved for summary judgment (*see generally Moran Enters., Inc. v Hurst*, 66 AD3d at 975; *Cava Constr. Co., Inc. v Gealtec Remodeling Corp.*, 58 AD3d 660 [2009]; *cf. Lance Intl., Inc. v First Natl. City Bank*, 86 AD3d 479 [2011]).

In support of its motion for summary judgment, El Equity submitted, inter alia, various letters, copies of HSBC bank account statements, copies of purported MMIS checks and deposit slips for those checks, and alleged excerpts from the deposition testimony of Diana B. Wooten, an officer of GBL. The Supreme Court should not have considered this evidence in support of El Equity's motion because El Equity failed to submit this evidence in admissible form (*see HSBC Mtge. Servs., Inc. v Royal*, 142 AD3d 952 [2016]; *Ulster County, N.Y. v CSI, Inc.*, 95 AD3d 1634 [2012]; *Marks v Robb*, 90 AD3d 863 [2011]; *Unifund CCR Partners v Youngman*, 89 AD3d 1377 [2011]; *Marmer v IF USA Express, Inc.*, 73 AD3d 868 [2010]; *Pandey v Parikh*, 57 AD3d 634 [2008]; *Xikis v Xikis*, 43 AD3d 1040 [2007]). However, the copies of the Escrow Agreement and the SDS Agreement, submitted by El Equity in support of its motion, were in admissible form because they were both acknowledged (*see John Deere Ins. Co. v GBE/Alasia Corp.*, 57 AD3d 620, 621-622 [2008]; *see generally Fairlane Fin. Corp. v Greater Metro Agency, Inc.*, 109 AD3d 868, 870 [2013]). Additionally, the copy of SDS's responses to El Equity's first set of interrogatories, also submitted in support of El Equity's motion, was sworn to and in admissible form (*see generally United Bank v Cambridge Sporting Goods Corp.*, 41 NY2d 254, 264 [1976]; *Smith v Kuhn*, 221 AD2d 620, 621 [1995]).

The evidence in admissible form submitted by El Equity demonstrated, prima facie, that it was an intended third-party beneficiary of the SDS Agreement, and that SDS breached that agreement. " 'A non-party [to a contract] may sue for breach of contract only if it is an intended, and not a mere incidental, beneficiary' " (*Town of Huntington v Long Is. Power Auth.*, 130 AD3d 1013, 1014 [2015], quoting *East Coast Athletic Club, Inc. v Chicago Tit. Ins. Co.*, 39 AD3d 461, 463 [2007]). However, " 'the identity of a third-party beneficiary need not be set forth in the contract or, for that matter, even be known as of the time of its execution' " (*Encore Lake Grove Homeowners Assn., Inc. v Cashin Assoc., P.C.*, 111 AD3d 881, 883 [2013], quoting *MK W. St. Co. v Meridien Hotels*, 184 AD2d 312, 313 [1992]). "A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [its] benefit and (3) that the benefit to [it] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost" (*Nanomedicon, LLC v Research Found. of State Univ. of N.Y.*, 112 AD3d 594, 596 [2013] [internal quotation marks omitted]). " 'In determining third-party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as the agreement,' " and " 'the obligation to perform to the third party beneficiary need not be expressly stated in the contract' " (*Encore Lake Grove Homeowners Assn., Inc. v Cashin Assoc., P.C.*, 111 AD3d at 882, quoting *Aievoli v Farley*, 223 AD2d 613, 614 [1996]).

Here, El Equity was not a party to the SDS Agreement. However, El Equity established, prima facie, that the SDS Agreement was a valid and binding contract between GBL and SDS, and that El Equity was an intended third-party beneficiary of the SDS Agreement (*see generally Clark v City of New York*, 130 AD3d 964, 965 [2015]). In particular, under the SDS Agreement, the Escrow Agreement was a defined term, and it was defined as the agreement entered into between GBL, El Equity, and Marine "to receive the deposit of MMIS [c]hecks and allocate the [c]hecks between [GBL] and El Equity." The Escrow Account was also defined in the SDS Agreement as the account created pursuant to the Escrow Agreement to receive the deposit of MMIS checks. Under the SDS Agreement, SDS was not permitted to deposit MMIS checks into any account other than the Escrow Account unless and until it received written instructions signed by both GBL and El Equity. Additionally, El Equity submitted evidence demonstrating that its attorney drafted the SDS Agreement, and that the intent of

the agreement was to provide "lock-box safeguards" to ensure that GBL could not divert funds.

El Equity also demonstrated, prima facie, that SDS breached the SDS Agreement. The SDS Agreement required SDS to "pick up all" MMIS checks "and deposit them into the Escrow Account," and SDS admittedly did not deposit four MMIS checks into the Escrow Account, but gave those checks directly to GBL. Contrary to SDS's contention, El Equity established, prima facie, that, to the extent that it sustained any damages, those damages were caused, at least in part, by SDS's breach of the SDS Agreement (*see generally Stratus Servs. Group, Inc. v Kash 'N Gold, Ltd.*, 90 AD3d 641, 642. [2011]).

In opposition, SDS failed to raise a triable issue of fact as to whether El Equity was an intended third-party beneficiary of the SDS Agreement, or as to whether SDS breached the SDS Agreement. SDS also failed to demonstrate that its performance under the SDS Agreement was rendered impossible or illegal.

However, contrary to El Equity's assertion, even assuming, without deciding, that it had a perfected security interest in GBL's right to payment and the proceeds thereof under the Home Care Contract, the Supreme Court properly determined that El Equity was not entitled to all of the proceeds of the four MMIS checks, and that its damages on its cross claim alleging breach of contract should be limited to the amount that it allegedly did not receive as part of its finance fee in connection with the four MMIS checks. The court also correctly determined that El Equity failed to establish, prima facie, the amount, if any, of its finance fee that it did not receive as a result of SDS's breach of the SDS Agreement. Accordingly, the court properly denied that branch of El Equity's motion which was for summary judgment on its cross claim against SDS alleging breach of contract. Since the court correctly determined that there is a triable issue of fact as to the amount of damages, if any, sustained by El Equity, the court also properly denied that branch of SDS's cross motion which was for summary judgment dismissing that cross claim, and properly referred the issue of damages for a hearing.

The Supreme Court properly granted that branch of SDS's cross motion which was for summary judgment dismissing the cross claim against it alleging conversion. " 'In order to establish a cause of action to recover damages for conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion

over the thing in question . . . to the exclusion of the plaintiff's rights' " (*Nugent v Hubbard*, 130 AD3d 893, 895 [2015], quoting *Mackey Reed Elec., Inc. v Morrone & Assoc., P.C.*, 125 AD3d 822, 824 [2015]). Although " 'a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract' " (*Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp.*, 64 AD3d 85, 113 [2009], quoting *North Shore Bottling Co. v Schmidt & Sons*, 22 NY2d 171, 179 [1968]), a cause of action alleging conversion cannot be " 'predicated on a mere breach of contract' " (*Weinstein v Natalie Weinstein Design Assoc., Inc.*, 86 AD3d 641, 642 [2011], quoting *Wolf v National Council of Young Israel*, 264 AD2d 416, 417 [1999]; *see Hochman v LaRea*, 14 AD3d 653, 655 [2005]; *Hassett-Belfer Senior Hous. v Town of N. Hempstead*, 270 AD2d 306, 307 [2000]). Here, SDS established its prima facie entitlement to judgment as a matter of law by showing that the cross claim against it alleging conversion, which alleged that SDS was required under the SDS Agreement to receive MMIS checks from the HRA and deposit them into the Escrow Account, and that SDS converted four of the MMIS checks when it delivered those checks to GBL without El Equity's authorization, was predicated on a breach of contract. In opposition, El Equity failed to raise a triable issue of fact. For the same reasons, the court properly denied that branch of El Equity's motion which was for summary judgment on that cross claim.

In support of its cross motion, HSBC established its prima facie entitlement to judgment as a matter of law dismissing the cross claim against it alleging aiding and abetting conversion by showing that El Equity's underlying claim sounding in conversion against GBL and its agents was predicated on a breach of contract (*see Weiss v Michael Taylor, Ltd.*, 95 AD3d 1305, 1306 [2012]; *East End Labs., Inc. v Sawaya*, 79 AD3d 1095, 1096 [2010]). In opposition, El Equity failed to raise a triable issue of fact. Accordingly, the Supreme Court properly granted HSBC's cross motion for summary judgment dismissing that cross claim, and properly denied that branch of El Equity's motion which was for summary judgment on that cross claim.

In its motion for summary judgment, El Equity also sought an award of punitive damages and attorneys' fees against SDS and HSBC. Not only did El Equity fail to plead or request punitive damages or attorneys' fees in its cross claims asserted against SDS and HSBC (*see Breeze Natl. v CATI, Inc.*, 292 AD2d 272, 273 [2002]; *Mosseri v Zimmerman & Zimmerman*,

114 AD2d 338, 339 [1985]), but El Equity also failed to demonstrate, prima facie, that SDS's breach of the SDS Agreement involved "a fraud evincing a high degree of moral turpitude, and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations," and that SDS's conduct was "aimed at the public generally" (*Vested Bus. Brokers, Ltd. v Ragone*, 131 AD3d 1232, 1234-1235 [2015] [internal quotation marks omitted]). Additionally, since " '[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action' " (*Tighe v North Shore Animal League Am.*, 142 AD3d 607, 610 [2016], quoting *McMorrow v Angelopoulos*, 113 AD3d 736, 740 [2014]), the summary dismissal of El Equity's cross claim against HSBC alleging aiding and abetting conversion mandates the summary denial of the request for punitive damages that was based thereon. El Equity also failed to identify any basis for an award of attorneys' fees. Accordingly, the Supreme Court properly denied that branch of El Equity's motion which was for summary judgment awarding it punitive damages and attorneys' fees against HSBC and SDS.

The parties' remaining contentions either are improperly raised for the first time on appeal or need not be addressed in light of our determination. Balkin, J.P., Hall, Sgroi and Barros, JJ., concur.