Woodmere Rehabilitation v Zafrin (2021 NY Slip Op 05039)





Woodmere Rehabilitation v Zafrin


2021 NY Slip Op 05039


Decided on September 22, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 22, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI
LINDA CHRISTOPHER, JJ.


2017-07771
 (Index No. 602487/15)

[*1]Woodmere Rehabilitation and Health Care Center, Inc., respondent, 
v
Mark Zafrin, et al., defendants, Walter Eisenberg, etc., et al., appellants.


Campolo, Middleton & McCormick, LLP, Ronkonkoma, NY (Patrick McCormick and Meghan M. Dolan of counsel), for appellants.
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, Lake Success, NY (Howard Fensterman, David J. Kaplan, John S. Cahalan, Robert Spolzino, and Steven Cohn of counsel), for respondent.



DECISION & ORDER
In a consolidated action, inter alia, to recover damages for breach of contract, Walter Eisenberg, Joseph Eisenberg, Irene Eisenberg, Michael Sedrish, and Philip Sedrish appeal from an order of the Supreme Court, Nassau County (Stephen A. Bucaria, J.), entered June 19, 2017. The order, insofar as appealed from, denied those parties' motion for summary judgment on their causes of action against Woodmere Rehabilitation and Health Care Center, Inc., and granted the cross motion of Woodmere Rehabilitation and Health Care Center, Inc., in effect, for summary judgment dismissing the second through fifth causes of action asserted against it by Walter Eisenberg, Joseph Eisenberg, Irene Eisenberg, Michael Sedrish, and Philip Sedrish.
ORDERED that the appeal from so much of the order as denied that branch of the motion of Walter Eisenberg, Joseph Eisenberg, Irene Eisenberg, Michael Sedrish, and Philip Sedrish which was for summary judgment on their first cause of action against Woodmere Rehabilitation and Health Care Center, Inc., is dismissed, as that portion of the order was superseded by an order of the same court entered August 15, 2019 (see Woodmere Rehabilitation & Health Care Ctr., Inc. v Zafrin, ___ AD3d ___ [Appellate Division Docket No. 2019-10539; decided herewith]); and it is further,
ORDERED that the order entered June 19, 2017, is affirmed insofar as reviewed; and it is further,
ORDERED that one bill of costs is awarded to Woodmere Rehabilitation and Health Care Center, Inc.
In 1963, Herbert Feldman, individually and doing business as Five Towns Nursing Home, leased premises from the predecessors in interest of Walter Eisenberg, Joseph Eisenberg, and Irene Eisenberg, as trustees under the last will and testament of Alex Eisenberg, and Michael Sedrish and Philip Sedrish, as trustees of certain trusts of Louis E. Sedrish (hereinafter collectively the trustees). The lease indicated that Feldman had previously been in possession of and owned the [*2]premises. Under the lease, Feldman warranted that he had a valid and subsisting license to operate a 120-bed nursing home at the premises, and agreed, at his sole cost and expense, to complete construction of a third floor on the premises and to obtain licensing necessary to add 60 beds to the operation. The lease provided that it was the intention of the parties that the premises would thereafter be operated by Feldman as a 180-bed (later increased to 186-bed) "first-class nursing home."
Paragraph 2.26 of the lease required Feldman, upon expiration or termination of the lease, to surrender the premises "broom clean" and together with all "furnishings, fixtures, machinery and equipment." That paragraph further provided: "It is understood and agreed that upon surrender, as aforesaid, the Demised Premises will be in first-class condition suitable for the continuation of a nursing home, as though the Lease had not been terminated, merely upon compliance with the license requirements of the . . . governmental agencies having jurisdiction over the operation and maintenance of nursing homes."
The lease was amended in 1965 and 1974. The 1974 amendment gave Feldman permission to connect, via a tunnel, the building leased from the trustees to a residential health care facility owned and operated by Feldman on adjoining premises. The lease was subsequently assigned, in 1996, to Woodmere Rehabilitation and Health Care Center, Inc. (hereinafter Woodmere), as tenant. A final lease amendment was executed by Woodmere and the trustees in 2010, among other things, extending the lease term to November 30, 2014.
Meanwhile, in 2008, Woodmere had submitted a modified proposal to the New York State Department of Health (hereinafter DOH) to replace the facility operated at the trustees' building and the connected facility with a 280-bed "state-of-the-art" residential health care facility to be built on premises adjacent to the two existing buildings. The project was approved and, in September 2014, Woodmere received permission to begin construction.
On October 20, 2014, the trustees, as landlord, sent a letter to the DOH, advising of their intent to evict Woodmere if it did not vacate the trustees' premises upon the November 30, 2014 expiration of the lease. Woodmere thereafter submitted to the DOH a closure plan, and received approval from the DOH to temporarily decertify the 186 beds operated at the trustees' building pending construction of its new facility. In January 2015, the trustees commenced a holdover proceeding against Woodmere.
Woodmere subsequently commenced an action against the trustees, among others, to recover its security deposits. The trustees commenced an action against Woodmere, seeking to recover damages for breach of the lease, breach of the implied covenant of good faith and fair dealing, conversion, and unjust enrichment, and to impose a constructive trust. The trustees alleged, inter alia, that under the lease, they maintained an interest in the right to operate 186 nursing home beds on their premises and that Woodmere deprived them of this interest by temporarily decertifying the 186 beds and obtaining approval for a replacement 280-bed facility. The holdover proceeding and the two actions were consolidated.
The trustees moved, inter alia, for summary judgment on their second through fifth causes of action against Woodmere, predicated upon their claims concerning their alleged interest in the right to operate 186 nursing home beds. Woodmere cross-moved, in effect, for summary judgment dismissing those causes of action. By order entered June 19, 2017, the Supreme Court, among other things, denied the aforementioned branches of the trustees' motion and granted Woodmere's cross motion. The trustees appeal.
Woodmere demonstrated its prima facie entitlement to judgment as a matter of law dismissing the trustees' second cause of action, which alleged breach of the lease and the covenant of good faith and fair dealing with respect to the right to operate nursing home beds. "[A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms'" (MHR [*3]Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645, quoting Greenfield v Philles Records, 98 NY2d 562, 569). Additionally, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance" (Dalton v Educ. Testing Serv., 87 NY2d 384, 389). "Encompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (id. at 389 [internal quotation marks omitted]).
Here, contrary to the trustees' contention, Woodmere's conduct of obtaining approval to relocate the 186 beds it was licensed to operate at the trustees' premises to its new facility, and to temporary decertify the beds pending construction, did not violate any express or implied terms of the lease. No terms in the lease, including the mandate that the premises be returned in "first-class condition suitable for the continuation of a nursing home," imposed an additional obligation upon Woodmere to transfer to the trustees its interest in the rights granted to it by the DOH and the Public Health and Health Planning Council to operate the 186 nursing home beds. Essentially, as expressed by the trustees in a letter to the DOH, they take the position that this lease provision obligated Woodmere to deliver a "licensed first-class nursing home" (emphasis added). However, that position is inconsistent with the language of the lease recognizing that the premises would be returned in a condition permitting continuation of a nursing home "upon compliance with [applicable] license requirements of the . . . governmental agencies having jurisdiction over the operation and maintenance of nursing homes."
It may be that the trustees would have been unable, under the law applicable upon expiration of the lease in 2014, to obtain the necessary approvals from those governmental agencies to operate a nursing home at the premises. Significantly, the instant lease was initially drafted and executed prior to the enactment of "certificate of need" laws in New York, which prohibit the establishment of any nursing home without approval of the Public Health and Health Planning Council, or substantial acquisition or modification of a nursing home without approval of the DOH, all upon a finding of public need (see L 1964, ch 730, §§ 4, 5, 7; L 1965, ch 795; L 1970, ch 617; Public Health Law §§ 2801[1]; 2801-a, 2802). The requirements of these laws, and the barriers they may have created on the ability of the trustees or a proposed tenant to operate a nursing home at the trustees' premises, could not have been in the contemplation of the parties at the time the lease was executed, and a change in the lease to account for the changed laws cannot be presumed or implied (see Gimbel Bros. v Brook Shopping Ctrs., 118 AD2d 532, 534). It is noteworthy that the lease was amended on several occasions after enactment of the "certificate of need" laws, but no provisions were made in the various amended leases to clarify or adjust the parties' rights or obligations in relation to the changed laws.
In sum, Woodmere demonstrated, prima facie, that it did not breach the lease or the covenant of good faith and fair dealing by relocating and temporarily decertifying the 186 beds it was licensed to operate at the subject premises. In opposition, the trustees failed to raise a triable issue of fact. Accordingly, the Supreme Court properly granted that branch of Woodmere's cross motion which was for summary judgment dismissing the trustees' second cause of action against it and, for the same reasons, properly denied that branch of the trustees' motion which was for summary judgment on that cause of action.
Woodmere also demonstrated its prima facie entitlement to judgment as a matter of law dismissing the trustees' third cause of action against it, which alleged conversion. While "a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, [a] breach of contract, a cause of action alleging conversion cannot be predicated on a mere breach of contract" (Greater Bright Light Home Care Servs., Inc. v Jeffries-El, 151 AD3d 818, 824 [citations and internal quotation marks omitted]; see Jaybar Realty Corp. v Armato, 175 AD3d 1391, 1394). Here, the conversion cause of action was expressly predicated upon Woodmere's alleged breach of its contractual duties, and no breach of a separate duty was alleged. In opposition to Woodmere's prima facie showing on this cause of action, the trustees failed to raise any triable issues of fact.
Woodmere demonstrated its prima facie entitlement to judgment as a matter of law [*4]dismissing the trustees' fourth cause of action against it, which alleged unjust enrichment. Recovery under this theory was precluded by the existence of a valid contract between the parties governing the subject matter of the dispute (see Jaybar Realty Corp. v Armato, 175 AD3d at 1393). In opposition, the trustees failed to raise a triable issue of fact.
Lastly, Woodmere demonstrated its prima facie entitlement to judgment as a matter of law dismissing the fifth cause of action against it, which sought to impose a constructive trust. Woodmere established that no confidential or fiduciary relationship, which exists where one party is under "a duty to act for or to give advice for the benefit of the other," arose between these parties or their predecessors merely from the fact that they were parties to a lease (Gargano v Morey, 165 AD3d 889, 890). In opposition, the trustees failed to raise a triable issue of fact.
Accordingly, the Supreme Court properly granted those branches of Woodmere's cross motion which were for summary judgment dismissing the trustees' third through fifth causes of action against it. For the same reason, those branches of the trustees' motion which were for summary judgment on those causes of action were properly denied.
DILLON, J.P., CONNOLLY, IANNACCI and CHRISTOPHER, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court